CASE 46—EQUITY—SEPTEMBER 29.

| | |
|---|---|
| 104 | 351 |
| 128 | 468 |

# Holmes v. Stix, Krouse & Co.

APPEAL FROM ROBERTSON CIRCUIT COURT.

1. RECEIVERS—JOINT PROPERTY.—The rule that the owner of property ought not to be deprived of its possession and subjected to the expense of a receivership unless it clearly appears that the equities of the case demand it,. applies with even more force where the property sought to be subjected to the receivership is owned jointly, one of the joint owners not being liable for the debt sued on.

2. EQUITIES—PARTNERSHIP LIEN—MORTGAGE.—The lien of a partner for the balance due him from the firm of which he was a member, attaches to real estate bought by the firm with firm assets and held by the partners jointly, and such a lien will take precedence of a subsequent mortgage executed by the other members of the firm of their undivided interests to their creditors who, from dealings with the firm, will be presumed to have knowledge that the property so mortgaged was held as partnership property.

J. T. SIMON AND SIMON & BUCKLER FOR APPELLANT.

1. The appellees were not entitled to the appointment of a receiver. Douglass, &c., v. Cline, &c., 12 Bush, 608; Wooley v. Holt, 14 Bush, 788; Civ. Code, sec. 299.

2. Holmes' partnership lien was superior to that of the appellees. Hodges v. Holeman, 1 Dana, 50; Pearson v. Keedy, 6 B. M., 128; Wilson v. Soper, 13 B. M., 411; Lindley on Partnership, 779; Crooker v. Crooker, 83 Am. Dec., 509; Spalding v. Wilson, 80 Ky., 589; Lowe v. Lowe, 13 Bush, 688.

HANSON KENNEDY FOR APPELLEES.

1. The appointment of a receiver in this action was proper on the ground "that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt." Civil Code, sec. 299; Taliaferro v. Gay, 78 Ky., 496; Wooley v. Holt, 14 Bush, 788. '

2. Where a member of a firm sells or mortgages his apparent interest as tenant in common of real estate for a consideration. paid him at the time, or under a state of facts where the purchaser's or mortgagee's legal position is changed for the worse —the purchaser or mortgagee having no notice of the character of the property in equity as co-partnership property—he is entitled to hold it under his purchase or mortgage. Jones on Mortgages, vol. 1, secs. 119 and 120; Seeley v. Mitchell's Assignee, 85 Ky., 508; Pomeroy's Equity Jur., vol. 2, secs. 747 and 749; Perry on Trusts, vol. 1, sec. 239; Buck v. Winn, 11 B. M., 323.

3. Apellant was guilty of such negligence in asserting his alleged lien on the partnership property of Holmes, Throckmorton & Co., that he is now estopped in equity and good conscience from so doing, as against the appellees. Bigelow on Estoppel, pp. 571, 583, 584, 586, 653; Hermann on Estoppel, p. 418; Phillips v. Clarke, 4 Met., 352; Rudd v. Matthews, 79 Ky., 479; Wilson v. Scott, 13 Ky. Law Rep., 926.

T. L. EDELEN FOR APPELLEES IN A PETITION FOR A MODIFICATION OF THE OPINION.

The appellees had no notice, actual or constructive, that the farm of one hundred and twenty-four acres owned jointly by the members of the firm of Throckmorton, Holmes & Co. was held as partnership property. The lien of appellees upon this, therefore, was superior to Holmes' lien after there had been a settlement of partnership accounts. Jones on Liens, sec. 796; Buchan v. Sumner, 2 Barb. Ch., 165; Phoenix Iron Works Co. v. N. Y. Sec. & Tr. Co., 83 Fed. R., 757; Neslin v. Wells, 104 U. S., 429; Pomeroy Eq. Jur., 454-6.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

It appears from this record that Aris Throckmorton, Samuel Holmes, and the appellant, J. W. Holmes, entered into a partnership as a firm for the sale, by retail, of goods, wares, and merchandise in Mt. Olivet, Ky., under. the firm name of Throckmorton, Holmes & Co., and continued as such firm until 1891, at which time, by consent of the partners, the firm was dissolved, and the goods on

hand divided; at least, appellant took a portion of the goods, as he says, amounting to about $600, and the other two partners retained about $2,200 worth. It further appears that the said Throckmorton and Samuel Holmes then entered into a partnership, or rather continued to do business under the firm name of Throckmorton & Holmes, and as such became indebted to the appellees to the extent of something over $1,500, which indebtedness appears to have been in existence as early as March, 1894. On the 17th of January, 1895, Throckmorton & Holmes executed a mortgage to the appellees on their two-thirds interest in a storehouse and lot in Mt. Olivet, Ky., which appears to be the same house that had formerly been used by Throckmorton, Holmes & Co., and continued to be used by Throckmorton & Holmes, and also mortgaged their two-thirds interest in a tract of land containing about 124 acres, as property of said Throckmorton & Holmes. There was also included in the mortgage 93 acres of land, the individual property of Throckmorton. This mortgage was executed to secure the indebtedness aforesaid, which was divided into eight notes, one falling due every sixty days, none of which seems to have been paid. On the 18th of November, 1895, the appellees instituted suit in the Robertson Circuit Court against Throckmorton & Holmes, seeking to recover judgment upon said notes, and for an enforcement of their mortgage lien, and made John W. Holmes a party defendant to said suit. At the December term, 1896, of said court, appellees obtained an order placing the storehouse and lot and the 124 acres of land in the hands of a receiver, and from that judgment appellant has prosecuted an appeal.

After appellant was made a party to the suit, he an-

[ 23 ]

swered, and alleged that the storehouse and lot and the 124 acres of land were partnership property of the firm of Throckmorton, Holmes & Co., bought and paid for out of assets of the firm, and held and used by said firm as firm property, and that he had paid out for said firm a considerable sum of money, amounting to over $1,100, for which said firm had executed its notes, which are filed, and a lien claimed upon the partnership property superior to that of the appellees for the amount so paid for the firm of Throckmorton, Holmes & Co. This claim was resisted by the appellees, and the court, upon final hearing adjudged that appellees had a lien upon the two-thirds interest mortgaged superior to that of appellant, and from that judgment-appellant prosecutes an appeal, and by agreement both appeals are heard together.

It is the contention of appellees that the court was authorized, under the law and facts, to place the partnership property in the hands of a receiver, and that, as appellant owned an undivided one-third interest in said property, it was not error to place the entire property in the hands of a receiver. It appears in this record that the individual tract of land, containing 93 acres, sold for $651, October 19, 1896. The evidence as to the value of the 124 acres of land conduces to show that it was worth at least $1,200, most of the witnesses placing the value at a larger amount, and the storehouse and lot were valued at from $700 to $1,000. It also appears from the deed to the 124-acre tract that the purchasers paid for it something over $2,000. The proof also tended to show that it could be divided without detriment to its value.

There can be no question as to the power of the court to appoint a receiver when the law and facts authorize it, but it is in the nature of an extreme remedy, and a

party, although a debtor, ought not to be deprived of the control of his property, and subjected to the expense incident to the appointment of a receiver, unless it clearly appears that the equities of the case demand it, and this principle applies with even more force to a joint owner who is in fact not a debtor. We are of the opinion that the court erred in the appointment of a receiver, and the judgment as to the appointment of the receiver and placing the property in his hands is reversed.

It is insisted for appellees that they had no notice of the claim of John W. Holmes at the time they took the mortgage, and that the firm of Throckmorton & Holmes was then solvent, and that as a consideration for the mortgage they extended the time for the payment of their claim, and that during the extension the mortgagors became insolvent, and that in equity they ought not to have their lien adjudged inferior to that of appellant, if, indeed, he has any lien. Appellees also insist that appellant, by his delay in asserting or making his claim, is now estopped as against them, even if it be a valid claim, and they deny its validity. The deed to the town property, as well as the deed to the 124-acre tract of land, mentions the three several parties individually, and neither of said deeds purports to have been to them as a firm. The mortgage executed to appellees also recites that the two-thirds interest conveyed was free from incumbrance, and it seems clear from the evidence in the case that Samuel Holmes, at and before the execution of the mortgage, had represented to appellees that the mortgaged property was free from incumbrance. It is insisted for appellant that, inasmuch as he paid the firm debts of Throckmorton, Holmes & Co., and that the firm executed to him the several notes filed therefor,

he has a superior lien upon the partnership property for the payment of said notes. He also insists that appellees had sufficient notice to put them on their guard as to his liens or claims. It is pretty clear from the testimony that the firm of Throckmorton, Holmes & Co. had dealings with appellees, and it is shown that part of the money advanced by appellant for the firm was to pay the debt that it owed to appellees during the existence of the firm of Throckmorton, Holmes & Co. It is also in evidence that an agent of appellees came to Mt. Olivet in March, 1894, to investigate the condition of the firm of Throckmorton & Holmes, and that Samuel Holmes rendered to him a written statement of the firm of Throckmorton & Holmes, from which it appears that Throckmorton owned quite a considerable amount of property individually, and that the firm was worth several thousand dollars, including the two-thirds interest mentioned in the mortgage, and stated that the same was free from incumbrance. An attorney or agent of appellees also visited Mt. Olivet just before the execution of the mortgage, and was there at the time of its execution, and was investigating the condition of the firm of Throckmorton & Holmes. There is no evidence of any conversation with appellant in regard to this debt, or the execution of the mortgage, at or before the time it was executed, and appellant testified that he did not know of its execution until about the time of the service of process on him. The testimony shows that appellant made the payments claimed by him, and that the property in question was the partnership property of Throckmorton, Holmes & Co., paid for by firm assets, and held and controlled by the firm as firm property.

It is the contention of appellees that the mortgage lien

is superior to that of appellant's lien, and it is the further contention of appellees that appellant's conduct has been such as to estop him from asserting his claim as against that of appellees; but we are unable to see that appellant has, by any act or any statement made by him at any time, misled appellees, or induced them to believe that the property in question was free from incumbrance. Hence, it follows that, if he at any time acquired a valid lien upon the property in question, the same has not been lost by any act or course of conduct on the part of appellant.

It is also contended for appellees that, inasmuch as the deeds to the property in question did not show that the vendees constituted a firm, the giving of the mortgage by the other joint owners of their interest passed a superior equity to the mortgaged property; and we are referred to the case of Seeley v. Mitchell's Assignee, 85 Ky. 508 [4 S. W. 190], in support of this contention. The court in discussing the question quotes with approval Jones on Mortgages, as follows:  " 'Land conveyed to members of a co-partnership as tenants in common, but purchased with co-partnership funds and used for co-partnership purposes, is treated in equity as co-partnership property. The creditors of the co-partnership are in such case entitled to priority of payment out of it in preference to the creditors of individual members of the firm. But if one member of the co-partnership mortgages his apparent interest as tenant in common of such land for a consideration paid him at the time, as for instance for a loan of money, the mortgagee having no notice of the character of the property in equity as co-partnership property, he is entitled to hold it under his mortgage.   He may rely upon the legal effect of the conveyance to his mortgagor and upon his

apparent title upon record. * * *' If a mort-
gagee takes a mortgage with knowledge of facts
which make the property in equity assets of a
firm, then he can not ask to stand in front of
those who have a right to have it applied as part-
nership assets. He, however, holds as a purchaser, and
if he had no notice that it was partnership real estate,
then there is no prevailing equity in favor of the part-
nership or its creditors. It might properly be held, per-
haps, that the continued use of the property by the part-
nership is notice of its equitable right in it, but, in the
case now presented it does not appear that the mort-
gagees knew, when their mortgages were executed, that
the firm of Campbell & Seeley was using the property, or
even that such a firm existed." In Buck v. Winn, 11 B.
Mon. 320, cited by appellees, it is true that Allen & Muir,
execution purchasers of the interest of Reaugh, one of the
partners in certain lots, which were partnership lots, were
permitted to hold the same as against the other partners
or firm creditors. The court in discussing the question
said: "Notwithstanding their failure to procure a deed
from the sheriff, they were, as purchasers under the exe-
cution, invested, not merely with an equity, but with an
inchoate legal title, which they had a right to consum-
mate at any time by a conveyance from the proper officer.
They must be regarded, then, as purchasers for a valu-
able consideration, having a right to the benefit of their
purchase unaffected by any equities in favor of the part-
ners, unless at the time of the purchase they had notice
of the existence of the partnership rights. They deny that
the property was purchased with partnership funds, or
belonged to the partnership, or was conveyed to Thomas
and Hiram Reaugh as partners. There was nothing in

the situation of the property from which notice can be inferred. It was not used by the partnership, nor is it shown that it was conveyed to the Reaughs in their partnership capacity. * * * It was incumbent upon those claiming it to be partnership property to have established the fact by competent proof; and although that fact may be established by other testimony, if it do not appear in the deed of conveyance, yet, if it do so appear, it would furnish evidence of constructive notice to the purchasers. But as the deed has not been produced, and there is an entire absence of all testimony of any notice to Allen & Muir, and nothing appears in the transaction from which notice can be inferred, the creditors of the firm have failed to make out such a case as entitles them to have the property subjected to the payment of their demands."

It will be seen from the foregoing that the cases then under consideration are essentially different from the case at bar. As before intimated, the proof shows conclusively that the property in controversy in this case was in fact the partnership property of Throckmorton, Holmes & Co., bought by the firm, and paid for by the firm, and used by it; and, inasmuch as it further appears that the appellees had business transactions with the firm of Throckmorton, Holmes & Co. prior to its dissolution, they may reasonably be presumed to have had notice that not only the storehouse occupied by the firm, but also the land in question, was owned as partnership property. The doctrine seems to be well settled that where real estate is purchased by a firm, and held as partnership property, it can not be subjected to the debts of the individual members to the detriment of the firm creditors. That doctrine was substantially announced in Divine v. Mitchum, 4 B. Mon. 488. In Pearson and Anderson v. Keedy, 6 B. Mon.

129, it is said: "Each partner has unquestionably a right to have the effects of the firm appropriated to the firm debts, and has in equity, at least, a lien upon those effects to secure, not only this appropriation, but also any final balance in his own favor." In Wilson v. Soper, 13 B. Mon. 418, it is said: "One member of a firm has no right to appropriate partnership effects to the payment of his individual debts without the assent of the other partners." It is said in the syllabus in the case of Lowe v. Lowe, 13 Bush, 688: "Partnership real estate shall be deemed personalty when by agreement, express or implied, the partners intend that it shall be treated as part and parcel of their capital stock, not only for the purposes of the partnership, but for all purposes. When such an agreement or intention is shown from the nature of the partnership business, the character and extent of the real estate involved, and the partners' mode of treating and considering it, it should be held to be personalty, not only for partnership purposes, but for purposes of distribution also. But, in the absence of such facts and circumstances as will warrant the court in finding that it was intended and agreed by the partners that their real estate should be regarded as personalty for all purposes, it should only be so regarded for the purposes of the partnership, and, after these are answered, the surplus should be held to be real estate for all other purposes." In Spalding v. Wilson, 80 Ky. 589, the question under consideration was whether a tract of 600 acres and 43½ acres of land should be held as partnership property or not. In the opinion the court quoted with approval as follows from Story, section 674: "In a court of equity, in taking an account for the benefit of creditors of partnership effects, the real estate is treated, for all intents and purposes, as a part of the partnership fund, whatever

Holmes v. Stix, Krouse & Co.

may be the nature of the conveyance." The court, in referring to the case of Buck v. Winn, hereinbefore referred to, said: "It is by no means decisive of this case. There the lots were purchased on speculation by the partners, and not used in the partnership, and still this court held the weight of authority to be 'that, in equity, the lots would be considered as forming a part of the partnership assets,' " It is further said: "The doctrine is also well established: 'That the partners must have intended partnership real estate to be treated as partnership assets, and therefore as personalty, so far as might be necessary for the payment of partnership liabilities, must be assumed in all cases, unless a contrary intention is plainly manifested,' etc. Says Chancellor Kent: 'There is no need of any other agreement than that the law will necessarily imply from the fact of the investment of partnership funds by the firm in real estate for partnership purposes.' " It is true that in the opinion supra the court used the following language: "If these partners, or one of them, had sold his individual interest in the land to an innocent purchaser, the deed having been made to them not as a firm, there might be some reason for denying to the other partners the right to have the entire land appropriated to the firm debts; but no such case is presented by this record." The last quotation is quite applicable to the case at bar, because no such question as a sale for consideration passed at the time, or that any consideration for the execution of the mortgage passed at the time, between the parties in this case. It is true that appellees extended the time for the payment of the debts sued on, as they say, on account of the mortgage; but, according to their own contention, the firm of Throckmorton & Holmes was abundantly solvent at that time, and the

extension must be presumed to have been for the benefit of Throckmorton & Holmes, or possibly for their joint benefit and that of appellees, and was a transaction of which appellant seems to have had no knowledge and in no sense a participant. It is a familiar rule of law that, as between two or more equities, the elder prevails; and, as it is manifest that appellant has the elder equity lien on the property in question, it results that the court below erred in adjudging in favor of appellees. The judgment is therefore reversed, and the cause remanded, with directions to adjudge to appellant a prior lien upon the real estate in controversy, and for proceedings consistent herewith.