## Wooley v. Mattingly.

(Decided October 7, 1924.)

### Appeal from Marion Circuit Court.

1. Partnership—Partner Running Business Need Not Keep Books, where Failure to do so is with Knowledge and Consent of Other Partner.—Rule that partner who runs business must keep account of transactions, and be able to make settlement with his copartner, has no application, where business is run without books being kept, with knowledge and consent of both parties.

2. Appeal and Error—Considerable Weight Given to Findings of Chancellor on Questions of Fact.—Considerable weight is given to findings of chancellor on questions of fact, and his judgment

to effect that there has been final settlement between partners will not be disturbed, where on all of evidence right of matter is left in doubt.

3.  Partnership—Partner, Not Asking for Settlement when Evidence of Business was in Existence, Cannot be Heard when Papers have been Lost.—A partner who acquiesced in failure to keep books, and was silent when partnership business was terminated, and did not ask for an accounting, will not, several years later, be heard to demand accounting, when conditions have changed and essential papers have been lost.

HUGH P. COOPER for appellant.

C. C. BOLDRICK and W. H. SPRAGENS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

B. F. Wooley and B. J. Mattingly began running a saloon in Lebanon, Kentucky, on March 1, 1913, as partners. The business was done in the name of B. J. Mattingly and was continued until July 1, 1919, when the Volstead act took effect.    On March 16, 1922, Wooley filed this suit against Mattingly, alleging that the partnership had never been settled and praying the dissolution of the partnership and a settlement of the partnership accounts. Mattingly answered denying the allegations of the petition and alleging that after the Volstead act went into effect they had a final settlement and divided equally between them all of the assets of the firm except 38 barrels of whiskey, which were afterwards divided, the defendant getting 19 barrels, the plaintiff the same number.    Proof was taken and the action being submitted by agreement of parties ''for judgment'' the circuit court dismissed the petition.    The plaintiff appeals.

It is agreed that Wooley furnished the means for the running of the business and that all the capital which he put in has been repaid to him.    It is shown that he drew out of the busines at one time $5,000.00, at another $2,-000.00 at another a Liberty bond for $1,000.00, at another eight hundred and forty-nine dollars and some cents, besides smaller sums paid from the cash drawer from time to time.    He also received the nineteen barrels of whiskey.    All this was profits.    The defendant testifies he has received the same amount.    Wooley bases the suit upon the ground that much larger profits were made and that the court erred on final hearing in not referring the case to the commissioner to make a settlement of the

partnership accounts. Appellee testifies that he ran the business; that everything was done in his name as Wooley wished to be a secret partner and not to be known in any way in the business; that he kept no books, but kept a slip memorandum in the drawer on which was entered what each had drawn out; that the accounts of people dealing with the firm were kept on a ticket; that Wooley had access to the slip memorandum and looked at it often; that he would draw money at different times, sometimes by check and sometimes from cash on hand; that in December, 1919, after the Volstead act took effect, he made a full settlement with Wooley of one-half of the profits of the business and paid him on that settlement $849 and some cents; this left nothing unsettled except the 38 barrels of whiskey, which were afterwards divided, and some uncollected accounts. He afterwards collected $93.60 on these and one-half of this was paid to Wooley.

Wooley testifies that he was a secret partner but that the suggestion that he should not be known in the business came from Mattingly. He denies that he knew Mattingly was keeping no books and denies that they made a settlement at any time. When they closed the saloon in July, 1919, they hoped that they would be allowed to resume business in January, and so the saloon was simply shut up and everything stayed there as it was until January. The house belonged to Wooley. When they found out in January that they could not resume business any more, all the fixtures were taken out of the house and all the papers and books that were there were lost or destroyed. It is shown by the uncontradicted proof that the greater part of the expenses of the business were paid out of cash, and only a small part of the expenses was paid out of the bank deposits, but what part was so paid cannot now be ascertained for the reason that the bank checks are not produced and seem to have been lost with the other papers when the furniture was moved out of the house. There is nothing produced on which a settlement of the accounts could be made except the bank accounts and some little books showing cash sales and money in the drawer, which are entirely too fragmentary to make up an account intelligently.

While the rule is that a partner who runs a business must keep an account of his transactions and be able to make a settlement with his co-partner, this rule has no application where the business is run without any books being kept with the knowledge and consent of both parties.

From Wooley's own testimony as to the time he spent in the saloon, what he did there, the amounts drawn out by each of them, and the length of time the business was conducted, the court is forced to the conclusion that a man of ordinary prudence should have known how the business was conducted and how the accounts were kept. If Wooley did not in fact know, it was his own fault, and Mattingly had a right to understand that Wooley was satisfied with the way things were running and the accounts were kept.

When they closed in July, 1919, this was a proper time to make a settlement, if none had been made before. The papers were then all on hand. The memorandum slips and the checks would have given the information upon which the settlement could intelligently be made. But Wooley, as his testimony admits, made no demand for a settlement for over two years, and in the meantime the books and papers had all been misplaced, and no intelligent settlement could be made from the books and papers presented to the court.

In cases like this considerable weight is given to the finding of the chancellor on questions of fact, and his judgment is not disturbed where, on all the evidence, the right of the matter is left in doubt. Under this rule we cannot say that the chancellor erred in dismissing the petition, for from the record presented we do not see how an intelligent settlement could be made, and this condition of affairs seems to have arisen from the fact that Wooley acquiesced in the way the accounts were kept for six years, and then when the business was closed, made no complaint until after all the records that were kept were lost. He was the owner of the building; he allowed it to stand locked up for six months and then when the furniture was taken out he took no precautions to preserve the records and made no demand then for a settlement. The case seems to us to fall within the rule that he who is silent when he ought to speak will not thereafter be heard when conditions have changed and essential papers then in existence have been lost.

Judgment affirmed.