D. L. PENDLETON, Jr., Surviving Partner in the Firm of Malcolm E. Strange, and D. L. Pendleton, Jr., dba Strange & Pendleton, Appellant,

v.

Ruth White STRANGE, Administratrix of the Estate of Malcolm E. Strange, Deceased, et al., Appellees.

Court of Appeals of Kentucky.

Feb. 28, 1964.

Rehearing Denied Sept. 25, 1964.

Lewis A. White, Mt. Sterling, Jesse S. Hogg, Winchester, for appellant.

Shumate & Shumate, H. M. Shumate, Irvine, for appellees.

WILLIAMS, Judge.

A partnership between Malcolm E. Strange and Dwight L. Pendleton, Jr., lawyers and farmers, was formed in September 1951. This is an action to settle the affairs of that partnership which was dissolved by the death of Malcolm E. Strange on September 10, 1959. The issues on appeal involve the ownership of a 568–acre farm and the settlement of the partnership accounts.

Determination of the rights of the parties is complicated because no formal written partnership agreement was entered into. The trial court permitted the surviving partner, Pendleton, to testify concerning transactions made with his deceased partner, but in his final judgment the court " * * sustains all objections to the evidence of the plaintiff concerning transactions had with

Malcolm E. Strange." Under the "deadman's" statute, KRS 421.210(2), the objections were properly sustained, albeit they should have been sustained at the time they were made.

The 568-acre farm was conveyed by Strange in 1949 to his brother. In 1952 the brother conveyed the farm back to Strange but the deed was not recorded. In 1958 an identical deed was executed by the brother to Strange which was recorded. In the meantime two smaller tracts adjoining the 568-acre tract were acquired by the partnership and title was taken in the names of both partners. Title to two city lots was also taken in the names of both partners. It is not disputed that the two smaller tracts and the two lots are partnership property. The trial court reasoned that had it been the intent of the parties to make the 568-acre tract partnership property the 1958 deed would have so indicated or Strange would have conveyed a one-half undivided interest to Pendleton by a separate instrument. To bolster this conclusion the trial court pointed out that Pendleton was a notary public and acknowledged the 1958 deed to Strange. Further, deeds to the other tracts and lots were made to both partners.

On the other side of the ledger Pendleton showed the 568 acres were obtained in 1952 after formation of the partnership. The consideration for the conveyance was $2,500 evidenced by a promissory note and the assumption of a $7,000 lien note. There is a dispute whether the $2,500 note was signed by Strange alone or by both partners. In any event both signed a renewal note which was later paid out of partnership funds. The original $7,000 note was payable to a man named Rowland and signed by Strange's brother who owned the property from 1949 to 1952. In 1955 Strange and Pendleton executed a note to Rowland in the amount of $9,793.50 which included the $7,000 note and interest thereon.

Much of the testimony offered by Pendleton was admitted over objection that it was self-serving or involved transactions with a dead person. There was competent evidence, however, to show the farm was improved during the time it was operated by the partners; that a transmission line right-of-way easement over it was granted by the partners; that a prospecting and mining rights lease was given by the partners; that the ASC office had assigned the farm a single number and agricultural conservation payments were made to Strange and Pendleton; that beginning in 1956 the property was listed for tax purposes in the name of the partnership; that Strange had admitted to various people the farm was partnership property; that working copies of income tax returns showed the farm to be a partnership asset.

■ The Uniform Partnership Act, which became effective in 1954, does not appear to change the common law partnership principles applicable to this case. The intention of the parties evidenced by their conduct governs what constitutes partnership property. Crane, Partnership, section 37 (2nd Ed. 1952); Holmes v. Stix, 104 Ky. 351, 47 S.W. 243 (1898). Evidence given considerable weight by courts in determining partnership intent, where title is held by one partner, includes use of partnership funds to improve the property, treatment of farm accounts as a partnership asset, use of partnership property to pay claims and expenses, declarations or admissions by the partner with title that the property is a partnership asset, and receipt of income by partnership. Annotation, 45 A.L.R.2d 1009, et seq.

■ The evidence heretofore recited is persuasive of a finding that the farm was partnership property. However, on the evidence as a whole, there is a doubt whether the property was intended to be a partnership asset. This Court has often said that considerable weight should be given the findings of the chancellor and his judgment will not be disturbed where, on all the evidence, the matter is left in doubt. Wooley v. Mattingly, 204 Ky. 699, 265 S.W. 302 (1924); Frank v. Thompson, 207 Ky. 335, 269 S.W.

295 (1925); Maynard v. Garber, Ky., 357 S.W.2d 547 (1962). There is a presumption against including as a partnership asset real estate owned by a partner which can be rebutted only by a clear manifestation of partnership intent. Sandefur v. Ganter, Ky., 259 S.W.2d 15, 37 A.L.R.2d 1073 (1953).

■ The evidence most favorable to the heirs establishes that Strange was the sole owner of record of the property at his death. That fact, plus the fact that he had conveyed a one-half interest in other property to Pendleton but had not done so with this property, is sufficient to sustain the findings of the trial court.

Appellant's second contention is that he is entitled, after adjustments, to $17,579.38 for capital contributed by him in excess of contributions by Strange and for personal funds spent in winding up the partnership. The chancellor found that, since appellant's accounting was insufficient to show what contributions Strange made in his lifetime, equality of contributions would be presumed.

Mariam Smallwood, who except for four months was the firm's secretary from September 1955 to September 1959, and is now Pendleton's secretary, testified that her records from 1955–1960 show Strange was credited with $250 and Pendleton with $28,-888.18. No records supporting these figures were introduced.

There is supporting testimony by the president of a bank that Pendleton contributed substantial sums from sales of stock and personal notes to the account of the partnership. From December 1958 to Strange's death in 1959, Pendleton deposited at least $15,650 which is substantiated by the records of the bank. The rest of the amount claimed is not sufficiently established by records or testimony of anyone but Pendleton. During the same period there were sums of money deposited with no source disclosed.

There are no records of account or written agreements for any period before 1958. The record is silent with respect to capital contributions by the partners from 1951 to 1958. Mrs. Smallwood's testimony for the period 1955–1960 is not supported by any books of accounting which are sufficient to establish Pendleton's claim.

In Marcum's Adm'r v. Marcum, 154 Ky. 401, 157 S.W. 1101 (1913), where a surviving partner sought to prove indebtedness under a verbal partnership agreement, this Court held the surviving partner was incompetent to testify or explain entries in the firm's account books (except as to their authenticity) unless the books and entries were kept by him. Moreover, the surviving partner was incompetent to testify about any transactions concerning firm checks. Third parties were competent to explain these transactions. The Court, announcing its policy when interest is not proven by competent testimony, said:

> "While the interest of each partner is not established by competent testimony, in the absence of such evidence each partner will be presumed to have an equal interest."

■■ Partnership is a fiduciary relationship. Bogert, Trusts and Trustees, vol. 1, ch. 2, section 36, p. 261 (1951). In the settlement of partnership affairs between a surviving partner and the estate of a deceased partner, the fiduciary relationship requires disclosure of all material facts. Crane, Partnership, section 68, p. 368 (2nd Ed. 1952).

In suits of accounting against trustees, this Court has held that all presumptions are against the trustee on his accounting and all doubts should be resolved against him. Johnson v. Murphy's Adm'r, 293 Ky. 294, 168 S.W.2d 1022 (1943); Burton v. Clere, 271 Ky. 411, 112 S.W.2d 57 (1937).

At best, the appellant's accounting is incomplete. Although he has established with competent testimony substantial deposits to the partnership accounts shortly before his partner's death, there is no explanation of other deposits during the same period. The secretary says that, from a record of charges and credits, Strange contributed $250 during the four years she

served. She does not substantiate these figures with any records. The records introduced by her do not support Pendleton's capital contributions for 1958 and 1959.

Perhaps the dead-man's statute and the presumption of equality require a harsh result in this case. But the difficulty follows the poorly conducted business affairs of the partnership. A record void of any partnership agreement or records indicating capital contributions by the partners requires a court of equity to administer what appears to be the partnership intent.

Based on the lack of evidence, the findings of the chancellor are not contrary to law. Indeed, the chancellor appears to have done a creditable job in his accounting for the partnership in view of the records presented.

The judgment is affirmed. The appellees have cross-appealed only in the event judgment is reversed. Consequently the judgment is affirmed on the cross-appeal.