## Marcum's Admr., et al. v. Marcum.

(Decided June 17, 1913.)

### Appeal from Clay Circuit Court.

1. Partnership—Creation—Evidence.—In an action for the settlement and accounting of a partnership between the surviving partner and the estate of his deceased partner evidence held to establish the existence of a partnership in each of two enterprises.

2. Partnership—Interests—Evidence—Presumption.—In the absence of evidence showing the interest of partners in a joint enterprise, all partners will be presumed to have equal interests.

3. Partnership—Witnesses—Competency—Books of Accounts.—In an action for an accounting and settlement of a partnership, the surviving partner in possession of the firm's books of accounts is a competent witness to their authenticity. He may not, however, explain or testify as to entries made therein, unless the books were kept, and the entries made, by him.

4. Partnership—Witnesses—Competency—Checks.—In an action for an accounting and settlement of a partnership, the surviving partner is incompetent to testify as to transactions evidenced by checks issued by the deceased partner on the firm's bank account, as being an act done or omitted to be done by a deceased person.

5. Partnership—Accounting—Evidence—Burden of Proof.—In an action for an accounting and settlement of a partnership, where a partner kept the books of account of the firm and the books contained no entry or explanation of checks issued by him upon the firm's bank account, such checks will be presumed to be an appropriation of the partnership assets for the individual benefit

of such partner, and the burden is upon him or his representatives to show the application of such funds to joint benefit.

6    Usury—Right to Plead.—The right to plead usury is personal, and the borrower may renounce the benefit of the usury statutes if he chooses and refuse to avail himself of their protection.

7    Partnership—Accounting—Usury.—In an action for an accounting and settlement of a partnership, the surviving partner should be credited with usury paid by him as a part of the partnership expense, if at the time he contracted to and did pay the usury, he, in so doing, acted in the utmost good faith toward the other partner. Such claims are not within the contemplation of section 3870, Ky. Stats., which requires claims against the estates of deceased persons to be purged of usury before suit.

8.    Partnership—Actions For Accounting—Equity—Judgment.—In an action for an accounting and settlement of partnership affairs, the correct practice is, where a dissolution of a partnership exists or is decreed, to direct a sale of all the firm assets of whatever nature, unless a lawful agreement to distribute them in specie is assented to by the parties; and if, because of litigation with third parties over claims or rights growing out of the partnership, or for other valid reasons, disposition of every material issue involved must be deferred, such partial distribution of the cash on hand as would be justified by the record should be ordered; and thereafter, when the rights of all parties can be adjusted, final judgment should be entered.

9.    Appeal—Harmless Error.—A judgment against a deceased partner for contribution before all assets of the partnership were converted into cash, is not prejudicial where it is reasonably certain from the record that such assets have little value and the case is retained on the docket for a further accounting.

A. T. W. MANNING, T. L. EDELEN for appellants.

H. C. FAULKNER and RAWLINGS & WRIGHT for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In the spring of 1906, H. B. Marcum and his son, Hiram R. Marcum, formed a partnership under the firm name of "H. B. Marcum & Son," with equal interests therein, and shortly thereafter operated a country store at Benge, in Clay County, Kentucky. The firm also engaged in logging on Red Bird Creek in that county. The store was under the personal management of the son; the logging business, under that of the father. During the existence of the partnership, they acquired three tracts of land in Clay County. The son also engaged in farming and trading on his own account. He kept no individual bank account, and to meet his personal requirements as to money checked on the firm's account in bank.

As to some of these items, he failed to make entries on the books of the partnership.

In October, 1908, Hiram S. Marcum died intestate, survived by his partner, his widow, and five infant children. His partner and William McWhorter were appointed and qualified as his administrators. The surviving partner took possession of the firm's assets and proceeded to liquidate the partnership estate. In 1909 he brought suit against his co-administrator and the real representatives of the decedent in which he sought a settlement of the partnership and a sale of the lands. The guardian *ad litem,* appointed for the infant children of the decedent, answered charging that plaintiff, in the liquidation of the firm's affairs, had been negligent and permitted the estate to depreciate. A reference to the master commissioner was neither asked of nor required by the court, but a marshaling of the assets and liabilities was undertaken to be made by means of exhibits filed with depositions taken in the case. After most of the proof had been taken, McWhorter, the administrator answered denying the insolvency of the partnership estate, alleging certain items mentioned in the proof were not properly chargeable to the estate of decedent. This answer was traversed by a reply. The real estate was sold while the case was being prepared for trial. Upon final submission, the chancellor entered his finding that the partnership existed, embraced the stock of goods, the logging contract, and the lands referred to in the pleadings; that the surviving partner paid 'individually $2,191.46 in discharge of the partnership obligations in excess of its assets that came to his hands; and that the deceased partner withdrew from the firm various sums of money aggregating $2,068.21, which he omitted to charge to himself and with which he was not charged on the books of the partnership. In accordance with said finding, he rendered judgment against the estate of the deceased partner in favor of plaintiff for $2,129.94, one-half the total of said two sums. The court made an additional finding as follows: "There is yet some outstanding indebtedness coming to said partnership and there is some litigation yet unsettled between this plaintiff and one Frank Hacker growing out of the logging job above mentioned and a complete settlement cannot be had of this partnership at this time, by reason of the facts above set forth, and the plaintiff will have to make a further accounting and settlement herein upon said unfinished business." The

defendants being dissatisfied with said finding as to the indebtedness of the deceased partner to the firm and with said judgment appeal.

Reversal is here sought upon three grounds: First, error of the court in rendering judgment against the estate of the deceased partner before liquidation of the partnership affairs; second, because the court failed to purge of usury claims against the partnership paid by appellee; and third, error of the court in permitting appellee to testify for himself as to verbal transactions between him and decedent which make up his cause of action against the estate of the decedent.

The errors complained of will be considered in their inverse order.

Complaint is made that appellee was permitted, over the objection of appellants, to testify as to the existence of the partnership between him and his deceased son, and also as to the items going to make up the claim of $2,060.21 found by the court to be owing by Hiram R. Marcum to the partnership.

The partnership agreement between appellee and his son was verbal, and appellee was unquestionably incompetent to testify concerning this matter. It is not seriously contended that the store referred to was not a partnership enterprise, but it is earnestly insisted that there was no competent evidence to establish the partnership in the logging contract. James F. Marcum, a competent witness, testified that he sold, making the trade with Hiram R. Marcum, and was given a firm check for some land from which timber was taken in the logging operations in question. E. G. Garrard, another competent witness, testified that the decedent admitted to him that he was a partner with his father in this logging contract. No contrary evidence was introduced, or attempted to be introduced, to overcome the facts established by this testimony. While the interest of each partner is not established by competent testimony, in the absence of such evidence each partner will be presumed to have an equal interest. The evidence, while not overwhelming, clearly establishes that appellee and his son were partners in the store and logging enterprise, and that their interests were equal.

We will next consider the item of $2,060.21, in support of which appellee introduced books of account of the firm and certain checks drawn by the deceased partner on the firm's bank account. The surviving partner

was lawfully entitled to, and was in, the possession of the firm's books of accounts and was a competent witness to their authenticity. To this extent, his testimony was not concerning any verbal statement, or any transaction with, or any act done or omitted to be done by the decedent, and was not inhibited by section 606, sub-section 2, of the Civil Code. He may not, however, explain or testify as to entries actually made therein, unless the books were kept and the entries made by him.. Aside from this, it would have been the duty of the court to compel the production of these books for examination by the parties interested, in order that they might be advised as to the condition of the partnership affairs, in so far as it could be ascertained from the books. No just ground of complaint is afforded appellants because of the introduction of these books.

The books show that Hiram R. Marcum was indebted to the firm $201.28 in excess of the amount owing by the surviving partner. No objection is made to this item. But objection is made to the introduction and consideration of various firm checks aggregating $1,931. They were introduced and made exhibits with the deposition of appellee. He was clearly incompetent to testify as to any transactions, of which these checks were evidence. Other witnesses, wholly competent, identified these checks as being in the handwriting of the deceased partner. They evidenced an appropriation of a part of the firm's assets. Some, on their face, showed an application of partnership assets to the individual benefits of the deceased partner. Evidence by competent witnesses shows a like application of the amounts represented by the other checks. The books contain no entry or explanation of any of the transactions involved in the issuing of these checks. It is in evidence that the books were kept by the deceased partner alone, and the store was under his exclusive management. The checks were drawn by him. Under this state of case, the burden was upon the representatives of the deceased partner to show the application by him of the firm's assets, of which these checks were an appropriation. In 30 Cyc., 742, the rule is thus stated:

"If a party fails to perform his duty of keeping accurate account of partnership affairs, all doubts respecting particular items will be resolved against him, unless there is some reason for not applying the rule, and in

such case the court will resort to the best evidence obtainable to ascertain the true state of the account.''

Again, Bates, in his work on the Law of Partnership (Vol. 1, Sec. 313), quoted with approval in Thomas v. Winchester Bank, 105 Ky., 694, said:

''And if one partner has the duty of keeping the books, and does not do so properly, every presumption will be against him; he may be charged with interest, if no account of profit can be given; he will be charged with sums coming into his hands, unless their application to joint benefit is most satisfactorily proved.''

The burden being upon appellants, and they having failed, to show the application of the sums represented by these checks, which, together with the uncontested item of $201.28, amount to $64 more than the finding of the chancellor on the item of liability of the deceased partner to the firm, they have no just ground of complaint as to this matter.

It is also contended that the item of $2,191.46, paid by appellee for the benefit of the partnership, should have been purged of the usury therein. The usury complained of is $120 paid on the Ed. Hogg note—just what amount of this was paid before the dissolution of the partnership the record does not show—and the further sum of $122.07 paid in excess of the legal rate of interest on the John A. Black note after the death of the partner.

The right to plead usury is personal. Usury statutes are made for the benefit of the necessitous borrower, who may renounce their benefit if he chooses, or refuse to avail himself of their protection. Campbell v. Johnson, 4 Dana, 177. Appellee and his son were engaged in an enterprise for their common benefit. The borrowing of money to carry on their business was prohibited neither by their partnership agreement nor by law. The payment of interest is a proper expense to be charged against the partnership. If paid by one partner, he is entitled to be reimbursed out of the firm assets, in default of which the other partner is liable to him for such proportion thereof as the interest of such partner may be. There is no showing that the firm, considering their financial resources and standing, the hazardous nature of the business in which they were engaged, and the condition of the money market at the time the loans were made, could have procured upon the security offered loans at less than ten per cent and eight per cent respectively. The burden was upon appellants to show

this. In partnership dealings, each partner is under the duty of acting with the utmost good faith toward the other. There is nothing in agreeing to pay and in paying usury inconsistent with that fidelity of conduct exacted of a partner. The payment of usury before the death of the partner was, so far as the record shows, entirely consistent with the soundest business policy and good morals, and the court should not, under such circumstances, compel appellee to exercise, on behalf of the partnership, a right which he is free to avail himself of or to reject. He had a discretion in the payment or refusal of payment of the usury, and he is not shown to have abused that discretion.

After the death of his partner, appellee was under no higher degree of fidelity in the liquidation, than he was in the transaction of the business of the partnership, during its existence. The death of the partner, in no wise, changed the conditions under which the money was borrowed and the usurious rate of interest promised. If payment of usury before the death of his partner did not amount to a breach of good faith, payment of usury upon partnership engagements entered into during the existence of the partnership cannot be a breach of duty. This is an action for an accounting and settlement of partnership affairs. The question at issue is not one of borrower and lender, but one of mutual accounts. The allowance or rejection of payments of usury as a legitimate expense of the partnership is to be determined not by the ultimate consequences to the partnership estate but by the good faith of the partner in making such payments. The claim here presented is not within the contemplation of section 3870, Kentucky Statutes. If it were, the claimant would have had to purge his demand of all usury before suit. The claim not being of that character, appellee was justified in the payment, after the death of his partner, of the usury agreed to be paid during the existence of the partnership.

Lastly, it is insisted that the court erred in entering judgment in favor of the surviving partner against the estate of the deceased partner before the partnership assets were converted into cash. The correct practice is, where a dissolution of a partnership exists or is decreed, to direct a sale of all the firm assets of whatever nature, unless a lawful agreement to distribute them in specie is assented to by the parties; and, if, because of litigation with third parties over claims or rights growing out of

the partnership, or for other valid reasons, a postponement of disposition of every material issue involved in the action becomes necessary, such partial distribution of the cash on hand as would be justified by the record should be ordered; and thereafter when the rights of all parties can be adjusted, enter final judgment. In the case at bar, it is in evidence that the firm assets, not realized upon at the time of the judgment, were practically worthless.· They consisted largely of notes and accounts. Those liable were practically insolvent. Limitation had run against many of the accounts. Suits were instituted, and in some cases a plea of payment was successfully maintained, in others judgments were obtained and executions issued and returned, "no property found." The cause was retained on the docket to await the issue of litigation growing out of the logging contract and of further attempts to collect the notes and accounts. It appears that there is little hope of recovery of any substantial amount from any source for the benefit of the partnership. Such being the case. the substantial rights of appellants have not been prejudiced, and we would not be warranted in reversing the judgment for the error complained of.

Perceiving no error in the record prejudicial to the rights of appellants, the judgment is affirmed.