## COOK v. PEACOCK.

### No. 2166.

Court of Civil Appeals of Texas. Eastland.

July 15, 1941.

Rehearing Denied Sept. 26, 1941.

Newberry & Nye and Montgomery & Campbell, all of Dallas, for appellant.

Robert B. Hershey, of Dallas, for appellee.

LESLIE, Chief Justice.

William L. Peacock, temporary administrator of the estate of Barney Clem, instituted this suit against C. M. Cook for a partnership accounting, and the trial resulted in a judgment in favor of the plaintiff for $1,560.93. The trial was before the court without a jury and defendant appeals. There are no findings of fact or conclusions of law in the transcript.

Plaintiff Peacock contended that the estate of Barney Clem was entitled to an undetermined sum of money as the result of a partnership which ended on the death of Barney Clem. It was alleged that the firm, styled "Cook & Clem", was a partnership engaged in the purchase and fattening of hogs for the market during the period of time from January 1, 1931, until the date of the death of Clem on July 28, 1939.

After a dispute had arisen between the representative of Clem's estate and Cook, the surviving partner, this suit was begun and a receivership and accounting was prayed for, as well as an injunction to restrain Cook from disposing of partnership assets, hogs, etc., before they were in a marketable condition. At a preliminary hearing October 14, 1939, an injunction was granted and one P. A. Bailey appointed auditor to investigate and report upon partnership accounts, etc. The auditor performed his duties and filed his original report November 7, 1939, concluding therein that $3,326.76 was due the Clem estate. On December 7, 1939, before trial, Cook filed exceptions and objections to this report, and thereupon said auditor, at the request of defendant Cook, re-audited the books, the defendant Cook then supplying him with more and further documentary evidence concerning the status of said partnership affairs and bearing directly upon the points raised by the objections and exceptions he had urged to the original report.

After a re-audit of the books in the light of said exceptions and the additional evidence and information given him by Cook, the auditor filed, on April 2, 1941, a supplemental report and in it he found that there was due and owing the Clem estate the sum of $1,560.93, instead of $3,326.76, found to be due said estate in the original report. After the filing of the supplemental report, the defendant Cook did not move for further report, or to re-commit. 53 C.J. p. 774, § 216, et seq. The defendant Cook thereafter filed no objections or exceptions to the supplemental report and later introduced it in evidence, presumably because it showed the "unreported" hog sales by him to be $3,167.21, whereas the original report showed "unreported" sales to be $4,208.55. The judgment was for $1,560.93, found to be due in the supplemental report.

The appellee Peacock filed his first amended original petition on March 29, 1940, and the appellant his second amended original answer and cross-action on April 6, 1940. In this the defendant Cook denied generally the allegations contained in the plaintiff's first amended original petition. He specially denied that Clem made any contribution to the original partnership assets and affirmatively alleged that he, appellant, furnished all the original capital invested, etc. He further alleged that this was done upon the understanding that Clem would furnish his services in feeding the hogs, in consideration of which he should have a working interest in half of the net profits from the proceeds of the sale of the hogs from time to time and that if any losses were suffered the same should be charged against the parties in equal proportions, etc. He further alleged that under the partnership agreement Clem was to have a personal drawing account of $20 per week for personal expenses from January 1, 1931, to December 31, 1937, the same to be charged against his interest in the profits, and that during such period of time Clem did receive such drawing account and that on December 31, 1937, he was paid the weekly drawing account without having the same charged against him, etc. It is unnecessary to state in detail the many contentions raised by these pleadings, but the sum and substance of the same are to

the effect that the plaintiff was not entitled to recover any money from the defendant. The defendant prayed that his exceptions and objections to the auditor's original report be sustained and that it be determined under his cross-action what amount the estate of Clem was indebted to him.

On the foregoing pleadings, the auditor's two reports and the appellant's objections and exceptions to the original report, the case went to trial. In addition to such reports, etc., the trial court had the benefit of testimony adduced from C. M. Cook, the defendant, Jack Germany, his bookkeeper, and P. A. Bailey, the auditor.

█ In this state of the record the exceptions filed to the auditor's report became part of the pleadings in the case, and the issues raised thereby are the issues to be tried. Lumpkin v. Jaquess, 31 Tex. Civ.App. 10, 71 S.W. 618.

The propositions upon which this appeal is predicated relate in substance to the testimony in general, and in some respects to particular phases thereof. It is undisputed that the partnership existed and that it originated January 1, 1931, and ended with the death of Barney Clem July 28, 1939.

During the entire period of partnership relations C. M. Cook had complete control and possession of the books and accounts dealing with the partnership transactions. He was the recognized managing partner. All checks were issued by him in the payment of partnership purchases and expenses, as well as all settlement checks issued to Clem. Such checks issued to the deceased partner were made upon the finding of the bookkeeper from the books as kept under the authority and supervision of Cook. Apparently, Barney Clem was an illiterate man, unable to check the records and relied upon the word of Cook and the accuracy of the latter's bookkeeping. Not until this action was instituted and after the court granted the restraining order October 14, 1939, did the surviving partner open a bank account in the name of the partnership. Prior to that time Cook handled personally all the partnership's funds and they were deposited by him in different banks and in his own name. One was the Mercantile National Bank of Dallas and the other bank (used largely for expenses and income from his farm in Collin County) was situated in McKinney, Texas. The funds in these banks were switched from one to the other, according to the wishes of said Cook and for reasons stated in his testimony:

"Q. They would bring them (hogs) to Dallas and sell them, and what was done with the proceeds of the sale? A. I turned it to the bookkeeper and I guess he deposited it. I had two bank accounts and I switched the money around to try to keep from borrowing.

"Q. They were your bank accounts? A. Yes sir.

"Q. When you would make a sale, would you turn the checks, together with the receipts, over to the bookkeeper? A. I turned them over to the bookkeeper.

"Q. With what instructions? A. I would tell him what place it was off of. If McKinney I would tell him the McKinney farm up there and he generally asked where to deposit that money, and sometimes I would deposit in McKinney and sometimes here in the Mercantile.

"Q. Whichever bank account happened to be the lowest? A. Yes sir."

This bit of testimony illustrates not only the surviving partner's dominion and control over the partnership funds, but his method of carrying on the business. Concerning his bookkeeping Cook testified:

"Q. Did you have your books regularly audited? A. No, I didn't." Further, the auditor's report shows that the profit and loss statement for 1931 was not made in that year, but was made and entered in the books during 1933.

█ The duties and responsibilities of a managing partner are in substance stated in Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166, 180, as follows: "It is the duty of the managing partner to keep an accurate account of his transactions with or for the partnership, and, if he fails to keep such account, all doubts respecting particular items will ordinarily be resolved against him on an accounting. Where he has failed to keep accurate accounts, the burden rests upon him, as managing partner, to show that he has performed his duty fairly, impartially, and honestly, and all doubts respecting particular items will ordinarily be resolved against him. 47 C.J. 1245. Under the circumstances, C. L. Dial has the burden of showing the application of firm assets to the payment of firm debts, Marcum's Administrator v. Marcum, 154 Ky. 401, 157 S.W. 1101, and every reasonable presumption must be indulged against him,

McKleroy v. Musgrove, 203 Ala. 603, 84 So. 280. Doubt as to the validity of credits which he claims must be resolved against him. Kirwan v. Henry (Ky.) 16 S.W. 828; Navarro v. Lamana (Tex.Civ.App.) 179 S.W. 922. The duty of a partner in control of such a business is analogous to that of a trustee. Raymond v. Vaughn, 128 Ill. 256, 21 N.E. 566, 4 L.R.A. 440, 15 Am.St.Rep. 112."

So much for the duties of a managing partner which have not been referred to with the view of establishing or maintaining that the appellant was guilty of any intentional fraud, but merely for the purpose of indicating that the record reflects an unfortunate degree of carelessness in the timely making and preservation of partnership records. Added to this situation is the further circumstance that the appellant in endeavoring to explain partnership arrangements and transactions was met with objections based on the provisions of the dead man's statute. This, however, was a legal obstacle, for which, under the circumstances, no allowance can be made since the effect of that statute is to be anticipated and should, as far as possible, be guarded against in the conduct of all business affairs.

 The nature and effect of an auditor's report is set forth in Art. 2292, R.S. 1925. In part that article reads: "Said report shall be admitted in evidence, but may be contradicted by evidence from either party where exceptions to such report or of any item thereof have been filed before the trial." In Stockwell v. Snyder et al., 126 Tex. 6, 84 S.W.2d 705, 707, our Supreme Court, referring to said statute and its opinion by Judge Brown in Eagle Mfg. Co. v. Hanaway, 90 Tex. 581, 40 S.W. 13, construing the same, quoted with approval from that opinion the following:

" 'By the terms of this statute, the report of an auditor, when excepted to, is admissible as evidence, and, being admissible, is to be considered by the court or jury, but it may be contradicted by evidence offered by either party; that is, the report so made, when excepted to, is prima facie proof of the facts stated in it, and, if not contradicted by evidence offered by either party, will support a judgment in accordance therewith. [Citing many authorities.]'

"The official audit was in evidence for all purposes, and counsel should have been permitted to inquire into and discuss the effect of it, and offer additional evidence upon the items duly excepted to."

Other authorities to the same effect are Medford v. Red River County, Tex.Civ. App., 84 S.W.2d 345 (9); Wilson v. Wilson, Tex.Civ.App., 135 S.W.2d 1069; Smith v. Hill, Tex.Civ.App., 12 S.W.2d 233; Hutton v. Graham, Tex.Civ.App., 140 S.W. 1185; Farmer v. Cloudt, Tex.Civ.App., 59 S.W. 614.

In appraising the points presented by this appeal we have referred to some of the authorities employing certain rules of law governing the disposition of cases like this one. We have called attention to the rule requiring the managing partner to strictly and accurately account to the non-managing partner, or the representative of his estate; and the further rule requiring that an auditor's report be given conclusive effect as to matters not excepted to, and that as to matters excepted to in the report it be given the effect of prima facie evidence. With such rules in mind, we have carefully considered the testimony in this case, and, in our opinion, the judgment of the trial court is reasonably supported by the same.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.