### NEWMAN et ux. v. NEWMAN et al.

No. 11602.

Court of Civil Appeals of Texas.
San Antonio.

May 15, 1946.

Rehearing Denied June 19, 1946.

394

De Witt Murray, of Floresville, for appellants.

Newton & Archer, of San Antonio, for appellees.

NORVELL, Justice.

This is a suit for dissolution of a partnership and for an accounting. The plaintiffs below and appellees here are Mary Newman, a widow, and her daughter Florence Newman, a person non compos mentis, appearing by Mary Newman as next friend. The defendants below and

appellants here are B. L. Newman, a son of Mary Newman, and his wife, Rebecca Newman. Trial below was to the court without a jury, and resulted in a judgment dissolving the partnership. The court found that the property of the partnership was not susceptible of partition in kind and consequently should be sold and the proceeds thereof divided. A receiver was appointed and directed to sell the assets of the partnership. The court decreed that out of the proceeds of the sale the receiver should pay all debts of the partnership; pay to Mary Newman the sum of $3,165, and then divide the balance remaining between Mary Newman, Florence Newman, B. L. Newman and Rebecca Newman, each receiving a one-fourth.

Appellants' first two points relate to the trial court's action in directing that the sum of $3,165 be paid to Mary Newman out of the proceeds of the sale of the partnership assets, prior to a division thereof among the partners.

By the first point appellants contend that this award as and for property contributed to the capital of the partnership at the time of its organization was erroneous "as there was no pleading of plaintiff supporting such judgment and no evidence of any agreement to repay such capital contribution."

The petition alleged that on January 1, 1938, Mary Newman was the owner of certain dairy cattle and equipment which she contributed to the capital of the partnership at the time of its formation. The petition listed numerous items and the alleged reasonable market value of each of said items. The aggregate value of this property was alleged to be $4,176. There was no allegation of an agreement whereby Mary Newman's contribution to the capital should be repaid to her upon dissolution of the partnership. Further, there was no evidence that such an agreement was ever made.

The evidence discloses that Mary Newman owned certain cows and equipment which were being used in the operation of a dairy. One of her sons had been operating the dairy for her but decided to quit, whereupon she sent for her son B. L. New-

man, who was then residing in East Texas, and asked him to come to Wilson County and run the dairy.

The partnership was a family affair and evidence relating to an express agreement is rather meager.

B. L. Newman testified that his mother, Mary Newman, wanted him to come down and run the dairy for her—"take it over and make her a living." Copies of partnership income tax returns show that the profits were to be divided equally four ways, among Mary Newman, Florence Newman, B. L. Newman and Rebecca Newman. The trial court found that "no definite time was set for the partnership to exist" and that finding has support in the evidence.

We hold that upon dissolution of the partnership, in the absence of an agreement to the contrary, Mary Newman was entitled to reimbursement for the value of her capital contribution to the partnership. We regard the case of Johnston v. Ballard, 83 Tex. 486, 18 S.W. 686, 687, as controlling upon the point. In the case cited, Judge Gaines said:

"In Lindley on Partnership it is said: 'When it is said that the shares of partners are prima facie equal, although their capitals are unequal, what is meant is that the losses of capital, like other losses, must be shared equally, but it is not meant that on final settlement of account capitals contributed unequally are to be treated as one aggregate fund, which ought to be divided among the partners in equal shares.' 2 Lindl. Partn., p. 676. See, also, Id., 800 et seq., as to the mode of accounting. In Jackson v. Crapp, 32 Ind. 422, there were written articles, which stipulated that these persons should contribute to the partnership very unequal sums, and that they should divide the profits equally. The agreement was silent as to the distribution of the capital upon dissolution. It was held that they were entitled to share in the capital stock, not equally, but in proportion to the respective amounts contributed by them. In Moley v. Brine, 120 Mass. 324, the same doctrine is applied. We conclude that, although an unequal contribution to the capital on part of the respective part-

ners may not, in the absence of other evidence, be sufficient to overcome the presumption of an equal participation in the profits, it is sufficient to show that the capital is not to be divided equally upon a final settlement and distribution. It is not unreasonable to presume that the use of the money of the partner furnishing the greater proportion of the capital is compensated by the services of the other, and that, therefore, they should share equally in the profits. But upon dissolution of such a partnership the latter necessarily retains his services, and it would seem just that the other should be entitled to withdraw his capital. The reason is very cogent in cases where the partnership is to continue for a short period, or may be determined at will. Jackson v. Crapp, supra."

Johnston v. Ballard was cited with approval in Vivins v. Proctor, 125 Tex. 137, 80 S.W.2d 307, and we do not understand the latter case as announcing a doctrine contrary to that stated in Johnston v. Ballard. We overrule appellants' first point.

We are of the opinion that error is disclosed by appellants' second point.

The trial court found that "Mary Newman advanced to the partnership certain personal property, and that the same was of the value of $3,165.00."

Appellants requested additional findings as to the various items of property "put into the organization of the said partnership by Mary Newman and the value of each article." This request for additional findings was refused.

In the petition appellees listed 25 cows, 1 bull, 6 heifers, 11 calves, 5 horses and some 28 items of farm machinery and equipment used in connection with the dairy. It was alleged that all this property was contributed to the capital of the partnership. The court ordered B. L. Newman to file an accounting in which he listed a schedule under the heading, "Capital Stock Contributed by Mary Newman." This schedule includes 25 cows, 1 bull, 6 heifers, 4 calves, 5 horses and some 11 items of farm machinery and dairy equipment. The value of Mary Newman's capital contribution was placed at $1,650.93, as compared with $4,176, stated in the petition.

We find no evidence in the statement of facts relating to the value as a unit of the livestock and equipment contributed to the partnership by Mary Newman. The statement of facts discloses that there was agreement as to certain items contributed by Mary Newman and dispute as to others. What evidence there was as to value of the property at the time it was contributed to the partnership, relates to particular items of property. As to some items listed by appellees in their petition, we find no evidence of value whatsoever. In fact, Mary Newman testified that she did not know what the property was worth. It is suggested by appellees in their brief that there was some agreement made in the trial court as to the value of certain items. No specific reference is made to either the transcript or statement of facts and we have been unable to find such an agreement. We are unable to ascertain which of the disputed items, if any, the trial court considered as having been in fact contributed by Mary Newman. Consequently, the method by which the trial court arrived at an estimate of $3,165 is not apparent and a recovery for that amount is not sustained by the evidence.

Appellants' third, fourth, fifth, sixth and seventh points complain of the trial court's action in failing to allow B. L. Newman credit for certain items which he contends were capital contributions made by him. He also claimed credits upon the accounting for items of feedstuff allegedly furnished by him. These items were disallowed by the court.

The trial court found:

"That B. L. Newman was to be and has been at all times since the sole managing partner and, as such, has at all times been the sole manager of its business and property.

"That no books of account or other permanent records have been kept and that it is impossible to ascertain the true condition of the partnership business. * * *

"That the defendants B. L. Newman and wife have failed to show by a pre-

ponderance of the evidence what sums of money or the value of any property which they have advanced to the partnership and have wholly failed to segregate it from that used or spent for their own personal benefit.

"That said B. L. Newman has so mixed and commingled his own individual money and property with that of and belonging to the partnership that it is impossible to distinguish, trace or locate his property or the value thereof or any money which could be chargeable to the partnership. * * *

"That neither Mary Newman or Florence Newman have received anything from the partnership either by way of repayment for advances or as any distribution of profits.

"That the defendant B. L. Newman has engaged in farming operations on other land than partnership land or the land upon which the partnership was to operate, as described in Plaintiffs' Petition, using in said operation the partnership farming equipment and cultivating and harvesting crops therefrom at the expense of the partnership, using the produce from said farm to feed the partnership cattle as well as other cattle, and has offered no evidence to show the value or proportionate value of his own interest in said fee, if any, separate and apart from the partnership interest therein.

"That the various items of credits claimed by the defendant B. L. Newman in his account filed in this cause are not true and correct charges against the partnership business."

These findings have support in the evidence. In fact, B. L. Newman admitted "that no books whatsoever have been kept as to such business," and that the information contained in the account filed by him was gathered from "the bank ledger sheets and checks issued on the account carried in the name of Mary Newman (the checks being drawn by B. L. Newman) and from (the) personal information and recollection (of B. L. Newman) of the affairs of said business, * * *."

In Cook v. Peacock, Tex.Civ. App., 154 S.W.2d 688, 690, it was said:

"The duties and responsibilities of a managing partner are in substance stated in Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166, 180, as follows: 'It is the duty of the managing partner to keep an accurate account of his transactions with or for the partnership, and, if he fails to keep such account, all doubts respecting particular items will ordinarily be resolved against him on an accounting. Where he has failed to keep accurate accounts, the burden rests upon him, as managing partner, to show that he has performed his duty fairly, impartially, and honestly, and all doubts respecting particular items will ordinarily be resolved against him. 47 C. J. 1245. Under the circumstances, C. L. Dial has the burden of showing the application of firm assets to the payment of firm debts, Marcum's Administrator v. Marcum, 154 Ky. 401, 157 S. W. 1101, and every reasonable presumption must be indulged against him, McKleroy v. Musgrove, 203 Ala. 603, 84 So. 280. Doubt as to the validity of credits which he claims must be resolved against him. Kirwan v. Henry, Ky., 16 S.W. 828; Navarro v. Lamana, Tex.Civ.App., 179 S.W. 922. The duty of a partner in control of such a business is analogous to that of a trustee. Raymond v. Vaughn, 128 Ill. 256, 21 N.E. 566, 4 L.R.A. 440, 15 Am. St. Rep. 112.'

"So much for the duties of a managing partner which have not been referred to with the view of establishing or maintaining that the appellant was guilty of any intentional fraud, but merely for the purpose of indicating that the record reflects an unfortunate degree of carelessness in the timely making and preservation of partnership records."

In Navarro v. Lamana, Tex.Civ.App., 179 S.W. 922, 923, a dissolution of a partnership and an accounting was sought. Navarro was the managing partner and with reference to a certain claim asserted by him the court said:

"It is true Navarro testified he made the disbursement, but this testimony was not corroborated in any way, and, he being the defendant in the action, the court was authorized in refusing credence to his statement that he made the disbursement."

See also Eaton **v.** Husted, 141 Tex. 349, 172 S.W.2d 493.

■ Appellants' points Nos. 3 to 7, inclusive, are overruled.

The trial court made specific findings as to various items of property belonging to the partnership at the time of the trial. These findings are attacked by appellants' eighth, ninth and tenth points.

Appellants' chief complaint seems to be that the trial court included in this list of partnership property certain cows allegedly belonging to O. D. Compton, who is B. L. Newman's son-in-law. The witness Joe Donaho made a count of the cattle upon two separate pieces of land in Wilson County. This count was made in the presence of Mary Newman and apparently at her request. Donaho made a memorandum of the count at the time. The trial court in arriving at the number of cattle stated in the judgment evidently took Donaho's figures and subtracted therefrom 18 cows which B. L. Newman testified he had sold after Donaho had made his count. In addition to this allowed deduction, B. L. Newman testified that certain other cows included in Donaho's count were the property of his son-in-law. Compton, however, was not a party to the suit and did not testify upon the trial. It is undisputed that cows belonging to the partnership were kept on both places in Wilson County.

■ In our opinion the cases cited and heretofore discussed by us have application here. The trial court was authorized in rejecting the uncorroborated testimony of B. L. Newman to the effect that certain cows found with and among other cows admittedly belonging to the partnership were not partnership property. Of course, Compton not being a party to this suit is not bound by the finding of ownership made by the trial judge. Insofar as appellants are concerned, there was no error in the trial court's finding.

■ Some point is made of the fact that the list of property owned by the partnership as set out in the judgment does not exactly correspond to the list set forth in the findings of the trial court. This is apparently the result of a mere oversight or a typographical error, and since appellants did not call the matter to the trial court's attention in their objections to said findings or otherwise, no reversible error is presented.

■ We are, however, of the opinion that the trial court erred in including within the list of property adjudged to belong to the partnership a certain "V–8 Ford truck, 1½ ton capacity, 1934."

The basis for excluding this item does not rest upon the testimony of B. L. Newman alone. It appears that B. L. Newman had a Ford truck when he came to Wilson County from East Texas. Concerning this truck, Mary Newman testified as follows:

"Q. Now a 1934 truck, was that yours? A. No, that wasn't mine either. * * *"

Since Mary Newman did not contribute this truck to the capital of the partnership, as she did not own it, and the trial court refused to allow B. L. Newman any credits for capital contributions to the partnership, we must conclude that this truck owned by B. L. Newman prior to the formation of the partnership never became partnership property.

Appellants' eighth and ninth points are overruled. Appellants' tenth point, insofar as it relates to the 1934 Ford truck, is sustained; as to other items mentioned therein it is overruled.

Except for the sustaining of appellants' second point, this Court would be in a position to reform and affirm the judgment of the lower court. As B. L. Newman admitted that Mary Newman made a capital contribution valued at $1,650.93, this Court, provided that appellees file a remittitur herein within fifteen days of the date of this opinion, in the sum of $1,514.07, will reform the judgment appealed from by reducing the sum adjudged to be due to Mary Newman as and for capital contributions from $3,165 to $1,650.93 and by eliminating from the judgment the part thereof that decrees that the 1934 Ford truck is partnership property, and affirm the judgment as so reformed. Otherwise the judgment will be reversed and the cause remanded for new trial.

■ In connection with this suggestion of remittitur, we have examined the evidence relating to the value of the various

items of property contributed by Mary Newman to the partnership capital. As pointed out heretofore, there was no evidence of value as to certain articles. It seems probable that the figure of $3,165 was arrived at under a misapprehension as to the existence of an agreement as to values. The existence of such an agreement is suggested in appellees' brief. However, this suggestion is not supported by the record. In any event, it appears that the award of $3,165 is not supported by the evidence and in view of the evidence it is excessive. We have concluded that Rule 440, Texas Rules Civil Procedure, has application to this case.

Upon remittitur, the judgment will be reformed and affirmed. Otherwise, the judgment will be reversed and the cause remanded.

On Motion for Rehearing.

Appellee Mary Newman has filed a remittitur herein as suggested by us in the original opinion. The judgment of the trial court is reformed by eliminating therefrom that portion thereof which decrees that the 1934 Ford truck is partnership property. That part of the judgment awarding Mary Newman the sum of $3,165 out of the partnership assets prior to distribution is reformed so as to reduce said amount from $3,165 to $1,650.93. The judgment of the trial court as so reformed is affirmed.

Appellants' motion for rehearing is overruled.

Reformed and affirmed.