## Fox v. Buckingham.

(Decided November 11, 1930.)

416

HAGER, PRICHARD & MALIN, KIRK & WELLS for appellant.

FRED HOWES for appellee.

Opinion of the Court by Stanley, Commissioner—Affirming.

Reference is to be made to the opinion on a former appeal of this case, Fox v. Buckingham, Trustee, 228 Ky. 176, 14 S. W. (2d) 421, for the terms and construction of a contract by which the appellant, David Fox, obligated himself to operate and develop a certain oil lease having two small wells, and to use one half of the revenue for the payment of debts of the Castle Petroleum Company and the other half for expenses and development. Upon a return of the case, in conformity with the suggestions made in the opinion, the plaintiff (now appellee) amended his petition and, setting up the character of the lease and the wells on it, alleged that had Fox complied with the terms of the contract by taking charge of the property and exercising ordinary diligence in its operation and development, sufficient revenue would have been produced over and above the expenses to have liquidated the indebtedness, and that he had breached his contract in failing to do so, which breach resulted in his liability to plaintiff as charged in the petition. It was further alleged that by reason of his breach of contract, equipment of the reasonable value of $1,500 had been lost. destroyed, or stolen, and the loss of the lease through its expiration, for which $3,000 in damages were prayed.

The answer denied these allegations and affirmatively pleaded that the wells never produced, nor could they have been made to produce by careful and prudent operation, sufficient oil to pay the expenses; that the contract was delivered to Fox only as an agent or trustee for the purpose of obtaining a purchaser for the property and in order to facilitate the conveyance in the event he could find a purchaser; that it was never intended that he should operate or develop the lease; and that the

agreement was impossible of execution and therefore void.

Several volumes of additional testimony was taken on these issues which, upon being considered by the court, resulted in a judgment against the defendant for $2,750 and interest, on the ground that had he used reasonable care and diligence in operating and developing the lease, instead of abandoning it, he could have realized a sum sufficient to liquidate the obligations. There is no mention in the judgment of the damages claimed by the plaintiff to have been suffered by reason of the loss of the equipment. But no cross-appeal is prosecuted.

The contention that the conveyance was delivered conditionally and did not become binding on the defendant was considered and determined adversely to him on the former appeal. We have, therefore, only the question whether the decision of the chancellor should be sustained on the facts.

The average price of oil during the four-year period following the execution of the contract was $2.18 a barrel, and the evidence as to the cost of pumping the two wells varies from $35 to $50 a month. It is pretty well established that if the two wells had produced as much as three barrels a day, the net income would have been sufficient to liquidate the debts within four years. Some witnesses say that a production of one barrel each would have made the wells worth operating. There is some proof that there were a few one-barrel wells in the field being pumped. This basis for calculation does not take into consideration any further development. Unless there was some further development undertaken under the contract, appellant was obliged to apply all revenue less expenses of operation to the payment of the debts. Some of the witnesses say that had there been applied one-half of the net revenue after deducting pumping costs and the prospective production been pledged, other wells could have been brought in on the eastern or southeastern portion of the lease, where better wells would likely have been secured. Nearby wells of the same kind had been pumped for several years without exhaustion. Experienced operators gave their opinion that within the terms of the contract they could have paid the debts and made a profit during the four years

immediately following its date. Of course, the evidence as to this, as well as to a continuation of production of the two existing wells, was of a speculative nature, being the opinions founded upon experience and the location of the wells. It was, however, of sufficient probative value to authorize the conclusion reached.

As stated, appellant never undertook to perform his contract. The two wells on the lease were brought in in November, 1922, at a cost of about $2,000 each. The equipment installed for operating them cost between $2,000 and $2,500. Their flush production was ten or fifteen barrels each, and after a time it was reduced to two and one-half or three barrels a day. The evidence of the plaintiff establishes a continuous production of at least that quantity preceding the execution of the contract with Fox. There is some evidence to the contrary, witnesses placing the production from the two wells at about three-fourths of a barrel daily. But those estimates are contradicted by the records made in the course of operation.

The defendant introduced a number of witnesses of experience who stated pumping of the two wells would have been unprofitable because of their very small yield and that the contract was impossible of performance. Substantiating this claim is evidence that after the wells had remained idle for a year and a half a slight test was made of them which proved that they would not produce more than one-half a barrel a day each. But it is shown in explanation that when a well lies idle for any considerable length of time the oil is driven away into sand by the accumulation of water, and unless it is shot it is necessary to pump it for some time in order to bring it back to normal production.

We have not overlooked other evidence introduced in behalf of the appellant respecting the actual and probable production of these wells, but a full consideration of all the record convinces the court that the weight and preponderance of the evidence sustains the finding of the chancellor that by prudent and diligent operation the lease could have been made to pay the debts.

The appellant never went to see about the lease, and says he relied upon information which led him to believe that it could not be operated profitably. He utterly

ignored his agreement and commitments. Several months later, when his attention was directed to the contract and to his legal liability under it, he asked the advice of counsel to whom he stated that the contract was delivered to him conditionally; that is, that he was only to secure a purchaser for the lease. Upon that information he was advised that he could not be held accountable. But his claim in that respect, in addition to being emphatically contradicted, was not sustainable as a matter of law. He is bound by his contract, and since his breach has compelled the other parties to pay the debts of the petroleum company, which the appellant assumed to pay as a consideration for the conveyance, he must reimburse them. The evidence shows that the contract was possible of performance, hence the argument and authorities submitted on that doctrine of relief are not applicable.

The judgment is therefore affirmed.