## Burton et al. v. Clere et al.

(Decided Nov. 23, 1937.)

As Modified on Denial of Rehearing Jan. 25, 1938.

W. J. FIELDS and JESSE K. LEWIS for appellants.
JOHN M. THEOBALD for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

G. B. Clere and his wife, Pearl Clere, as the operator and owner of a coal mine in Carter county, had become indebted to a number of men for labor and to other individuals and firms for materials and supplies in the aggregate about $4,200. On August 12, 1927, they, as lessors, and all these creditors, as "associate lessors," joined in a lease of the mine to George Ferguson, Jr., O. L. Kerns, and Wilcox Ward, as parties of the second part. The lease sets out the names of the creditors and the respective sums due them, which range from $2.50 to $1,025, the amount due Ferguson, the lessee. It is stipulated in the contract "that in con-

sideration of said associates of the lessors in this lease foregoing any attempt to collect said indebtedness by legal methods from the lessors or lessees, the said lessees will pay a royalty of ten cents (10c) per ton of 2000 pounds for all coal mined and marketed off of said premises, and apply said royalty to the payment of said indebtedness until same is paid off, the labor indebtedness above mentioned to be paid first, payments to be made monthly on a pro-rata basis of the respective amounts owing to each of said associates, and when the labor indebtedness shall have been paid, then the other indebtedness above mentioned to be paid in the same manner.''

Other material provisions of the lease are that after the above indebtedness has been thus paid, the lessees shall pay to Mrs. Clere a royalty of 5 cents per ton, and their failure to make such royalty payments monthly gives the lessors the privilege of declaring the lease forfeited; that the lessees shall keep a record of all coal produced; and that the lessors and associates have a lien upon the coal mined and all improvements and equipment placed at the mine. The lease was to continue in force for a period of ten years unless sooner terminated by the lessees, who were given the right to terminate it at their pleasure after thirty days' written notice to the lessors.

Not long afterward Ward and Kerns sold their interest in the lease to Ferguson by an oral contract. On August 25, 1928, Clere and wife executed a new lease to Ferguson whereby they leased this mine for a period of eight years at $100 a year, which sum was to be applied on notes aggregating $800, which Clere owed Ferguson. The cancellation of the first lease and the making of the new one was without the consent of any or the knowledge of most of the creditors who were parties to the former contract.

On June 24, 1932, a number of the creditors joined in a suit against Ferguson and Clere, undertaking to sue for themselves and others similarly situated. The obligations of the defendants under the original lease were set forth as well as the individual assumption by Ferguson of the obligations of his co-lessees. These obligations were pleaded as an agreement to create a trust fund for the benefit of the creditors. It was alleged that the mine had been operated with an aver-

age production of 10,000 tons of coal a year; that the royalties were more than sufficient to liquidate the debt; and that the amount was in the hands of the defendant Ferguson as a trust fund, nothing having been paid on the debts. The plaintiffs prayed for an accounting and settlement of the trust and a judgment for the amounts due each of them in the total sum of $4,200 with interest and all equitable and proper relief.

Clere did not answer. Ferguson placed in issue all the material allegations of the petition and pleaded that he had never signed the original lease and could not be held liable under the statute of frauds relating to the assumption of paying the debt of another. It is further alleged that he only operated the mine under his second lease, which was set up, and the royalties had been paid to Pearl M. Clere. It is alleged following the execution of the lease it was found that the mine could not be operated profitably and that only 93 tons of coal were mined under it. It was canceled on December 15, 1927, upon the demand of the Cleres for a failure to pay the royalties.

The evidence in the case proved in general and in substance what is above outlined. Other than as to the 93 tons of coal mined shortly after the original lease was made, the evidence of the quantity mined and marketed is very indefinite. The plaintiffs introduced evidence to the effect that the maximum capacity of the mine had once been 90 tons a day, and the minimum was about 30 tons. Their evidence was confined to showing that the mine had been operated by Ferguson, and that six or seven men were employed in producing coal, and that each miner should take from three to five tons a day. But this evidence was as to intermittent operations, and no one undertook to say how often or to what extent the mine had been worked and the quantity of coal produced. The plaintiffs called Ferguson as a witness on cross-examination, but the evidence extracted from him was not much more definite. He claimed to have kept no permanent records. He had sometimes worked two, four, or six men a day, but he would not undertake to give any kind of estimate of the quantity produced, although he was an experienced miner. The impression is that Ferguson knew much more than he disclosed. He introduced no evidence in his own behalf.

The trial court was of opinion that the new lease to

Ferguson was a sham and was made for the purpose of lulling the other creditors into sleep until the coal was worked out and thus defeat the collection of their claims. He held that Clere and wife could not cancel the original lease and deprive the creditors of their rights under it. Being confronted with the indefiniteness of the evidence as to the quantity of coal produced under the second lease, the court accepted as a maximum of royalty $100 a year, the fixed sum provided in that instrument, to be credited on Clere's debt to Ferguson. This was effective three years and ten months and the amount equaled $383.33. Adding $9.30 for the royalty on the 93 tons produced under the first lease as the defendant testified, the court rendered judgment for $392.63, to be divided proportionately among the creditors.

The creditors appeal. Ferguson moves to dismiss the appeal because of lack of jurisdiction. He asks a cross-appeal if his motion be not sustained.

The appellee maintains that each party's claim is separate and distinct and all cannot be added to confer jurisdiction. The appellants maintain that the amount involved is the sum due all the creditors collectively, that is, that they are seeking a trust fund which is held by the appellee for the benefit of all of them. Both parties rely upon Wallins Creek Collieries Company v. Marshall, 217 Ky. 647, 290 S. W. 519. It may be observed that the claims of two of the appellants exceed $200 after a proportionate credit of the judgment is applied, so that in any event they have the right to have their appeal determined.

In the Marshall Case there were involved the claims of a number of miners for the difference in the scale of wages under an old and a new labor union contract. Each prayed judgment for his individual account, and the judgment appealed from was not for the aggregate sum but was given to each party, individually. It was held that the total of the judgments was not the criterion for determining the amount involved on the appeal, which had been granted below, and the appeals were dismissed. However, in the course of the opinion it is pointed out that where several creditors file a joint petition against their common debtor and his transferee, asserting a claim against a fund in the hands of the transferee, and a judgment is rendered against him subjecting that fund, the amount in controversy is the trust

fund, although the several claims of the plaintiffs were insufficient to give jurisdiction. We may regard this as a case of that class.

By the terms of the lease, for a good and valuable consideration, Ferguson undertook to withhold from the owner of the mine and the debtor, with their consent, a royalty of 10 cents per ton for the joint benefit of all the lien creditors. They alleged that the fund amounted to more than $4,200 at the time of the suit, and an accounting and settlement of the trust undertaken by Ferguson was the relief prayed. That is the amount involved. The motion for a dismissal of the appeal is therefore overruled. Commonwealth for Wiggins v. Scott, 112 Ky. 252, 255, 65 S. W. 596, 23 Ky. Law Rep. 1488, 55 L. R. A. 597; Singletary v. Boerner-Morris Candy Company, 129 Ky. 556, 112 S. W. 637; Magic City Coal & Feed Company v. Lewis, 164 Ky. 454, 175 S. W. 992; Ohio Valley Banking & Trust Company v. King, 238 Ky. 712, 38 S. W. (2d) 663.

Ferguson denied having signed the lease. There was some evidence tending to show that he had done so and that the original paper indicated his name had been erased. We do not think it material whether he signed it or not. He had procured the other creditors to sign the lease and surrender their liens as "associate lessors," and when he accepted the lease and entered upon the operation of the mine he accepted all its conditions. One of those conditions was not that he should pay Clere's debt to the creditors but that he should assume as his own obligation their payment out of the fund which he would withhold from the debtors. See Fox v. Buckingham, 228 Ky. 176, 14 S. W. (2d) 421; Fox v. Buckingham, 237 Ky. 415, 35 S. W. (2d) 897. The defendant's confidence in the statute of frauds is therefore not well founded.

The right of the Cleres to demand a cancellation of the lease was predicated upon the lessee's failure to pay them royalties. None was due the Cleres until the creditors had been paid. Ferguson, as lessee, had the right, in good faith, to rescind the lease on 30 days' written notice; but he did not proceed in that manner. Unknown to the other parties to the contract, he and the debtor proceeded to execute a new lease and provide for the payment of his individual claims only. We think the trial court was justified in holding this to be a sham

and pretense and that the operations of the mine under it must be regarded as having been under the original contract.

There being no substantial or definite evidence as to the quantity of coal produced, the acceptance by the court of the agreement of Ferguson to credit the notes owed him with $100 a year, as the consideration for the lease, was perhaps justified as indicating a minimum sum, but we think its exclusive acceptance was prejudicial to the plaintiffs. The plaintiffs had established that the defendant had become their trustee to hold and pay the royalties to them. He had bound himself to keep a record of the coal mined, and had he done so the amount of the trust fund could have been definitely established. Generally, in an action against a trustee, such as an assignee for the benefit of creditors, when it is shown that assets were received by him, the burden rests upon the trustee to make a satisfactory accounting. Fidelity & Deposit Company v. Husbands, 174 Ky. 200, 192 S. W. 51. Here the creditors surrendered their liens in the confidence that Ferguson would properly and diligently perform the trust which he was undertaking. It was not only his duty under the contract, but, independent of that express commitment, his duty to keep records and render an accounting. Bogert, Trusts & Trustees, sec. 962; 65 C. J. 878, 920; Smallwood v. Lawson, 183 Ky. 189, 208 S. W. 808. The Restatement of the Law of Trusts, sec. 172, declares that to be the duty of a trustee, and further that "the beneficiary may, by a proper proceeding, compel the trustee to render to the proper court an accounting of the administration of his trust." The further rule is thus stated in Bogert, sec. 962:

> "The principal penalty usually stated to apply to a trustee who fails to keep proper records of his trust is that 'all presumptions are against him' on his accounting, or that 'all doubts on the accounting are resolved against him.' He has the burden of showing on the accounting how much principal and income he has received and from whom, how much disbursed and to whom, and what is on hand at the time. If he claims that he received less than the cestuis allege he received, and has no written records to back his claim due to his own faulty system of keeping accounts, the court will be strongly in-

clined to charge him with the sum he is alleged to have received."

The rule is supported by Ward v. Shire (Ky.) 65 S. W. 8; Wilson v. Smoot, 186 Ky. 194, 216 S. W. 129; Anglin v. Powell, 235 Ky. 705, 32 S. W. (2d) 54.

The defendant did not undertake to make any sort of accounting or disclosure. The effort to obtain same by examining him before the judge, with the defendant resorting to a lack of memory on material matters and a claim that he had no records, was of little effect. It seems to us the burden shifted to the defendant to make a full and complete disclosure of his operation of the mine from the beginning in order that the court might have something tangible upon which to render judgment. If he does not the presumptions are against him.

We conclude the case should be remanded for proceedings consistent with our opinion. This will permit the defendant to establish, as he has claimed, that some of the creditors have waived their rights under the contract.

The judgment is reversed on the original and affirmed on the cross appeal.