## Johnson et al. v. Murphy's Adm'r.

Feb. 16, 1943.

C. X. Johnson and Chester A. Bach for appellant.

E. B. Rose for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

T. C. Johnson died intestate in September, 1921, a citizen and resident of Lee county, Kentucky. He left surviving him his widow, Eliza B. Johnson, and ten children. Soon after the death of decedent Eliza B. Johnson, his widow, qualified as the administratrix of his estate and administered the same.

Allie May Johnson, who was the plaintiff below and appellee in this appeal, was the oldest of her father's ten children and was single at the time of her father's death and remained single until 1933 when she married John Murphy, at which time she was 57 years old. We will hereinafter refer to her as Mrs. Murphy. After the death of her father, Mrs. Murphy remained in the home with her mother and other members of the family. In 1924 she executed a deed to her mother, Eliza B. Johnson, conveying to her her one-tenth undivided interest in her father's landed estate, and alleges that at the same time she turned over to her mother $2,000 in money on deposit in the First National Bank of Jackson, Kentucky, and $1,500 in the Peoples Exchange Bank of Beattyville, and also one share of capital stock of the latter bank of the par value of $100.

In 1936 Mary B. Johnson Rowland, a married daughter of deceased, filed an action in the Lee circuit court naming Eliza B. Johnson and certain other heirs of decedent party defendants, seeking to have the landed estate of decedent partitioned among the heirs and widow and pursuant to that action a judgment was entered in the Lee circuit court in 1937 adjudging that Eliza B. Johnson was the owner of one-half interest in the tract

of land, she having purchased interests of some of the heirs, which one-half adjudged to Mrs. Johnson included the one-tenth interest conveyed to her by Mrs. Murphy, and the master commissioner of the court made deeds accordingly, excepting the timber which was reserved for C. X. Johnson. Mrs. Murphy was not made a party to that action and was not taken into consideration, she having theretofore deeded her undivided interest to Mrs. Johnson. In 1938 Mrs. Johnson conveyed to Mrs. Murphy for life a certain portion of Mrs. Johnson's one-half of the land with remainder in fee to A. L. Johnson, but reserved the merchantable timber on the land conveyed and also reserved a portion as dower for her natural life.

John Murphy, husband of Mrs. Murphy, had previously been married and brought into the home with Mrs. Murphy and Mrs. Johnson two children of his former marriage and it appears that some discord arose between the members of the Johnson family and the children of Mr. Murphy. Mr. Murphy went to the state of Ohio and stayed for awhile but later returned to his wife. There is some contention on the part of appellants that Mr. Murphy abandoned Mrs. Murphy but appellee denies any abandonment and claims that Mr. Murphy received an injury while engaged in work of some nature and went away for the purpose of receiving treatments for his injury. After John Murphy returned to the Johnson home in 1939, Mrs. Murphy brought this action in the Lee circuit court against her mother, Eliza B. Johnson, and her brother, A. L. Johnson, setting out the facts substantially as above stated, alleging that the purpose and intention of the deed executed by her to her mother conveying the one-tenth undivided interest in her deceased father's land was intended to be a deed of trust rather than a conveyance in fee simple, and also the sums of money on deposit in the banks and the share of bank stock referred to above was turned over by her to her mother in trust and for safekeeping for the use and benefit of the plaintiff, Mrs. Murphy.

She further alleged that the deed executed in June, 1938, by her mother, Mrs. Johnson, conveying to her for life with remainder in fee to A. L. Johnson a certain portion of the one-half interest in her deceased father's land allotted to Mrs. Johnson, was a fraud upon plaintiff's rights; that her original interest inherited from her fath-

er in his entire landed estate consisting of about 500 or 600 acres, was an undivided one-tenth interest in fee simple subject to the dower rights of her mother and that her said one-tenth undivided interest was included in the conveyance made by her mother to her (plaintiff) for life with remainder in fee to A. L. Johnson, and that they are attempting to defraud her of her right to her interest in the said land. She asked that she be adjudged entitled to have one-fifth interest of the tract of land allotted to her mother in the partition of the land set aside, and allotted and conveyed to her (plaintiff) in fee simple, and that she is entitled to have an accounting from her mother for the money and share of bank stock turned over to her in trust, together with all interest on the money and dividends on the stock, and that same be delivered and paid over to her. Soon after Mrs. Murphy brought this action Mrs. Johnson informed John Murphy that he could no longer remain in her household and he and Mrs. Murphy moved from Mrs. Johnson's home.

The defendants (appellants) filed their answer and counterclaim denying the allegations of the petition with respect to any fraud or persuasion on their part to induce Mrs. Murphy to execute to Eliza B. Johnson a deed to her one-tenth interest in decedent's estate, or to obtain from her the custody and control of her money on deposit in the banks or any property other than one share of stock in the Peoples Exchange Bank of Beattyville, referred to in the petition, and denied that the deed referred to was intended to be in trust for the benefit of Mrs. Murphy, or that the conveyance was anything other than a free, voluntary conveyance by her of her fee simple title to her interest in her father's estate. They admitted that the land was partitioned in 1936 as alleged in the petition but denied that any part of that portion deeded to Eliza B. Johnson by the court commissioner pursuant to the judgment partitioning said land had theretofore been conveyed by Mrs. Murphy to Mrs. Johnson in trust, or that any right or title or interest of Mrs. Murphy was allotted or conveyed to Mrs. Johnson except the one-tenth interest which she had theretofore acquired in fee simple from Mrs. Murphy. They denied that Mrs. Murphy was entitled to have one-fifth interest or any interest in the said tract of land conveyed to Eliza B. Johnson by the commissioner's deed allotted or conveyed to her.

They further alleged that subsequent to the partition of the land of T. C. Johnson, deceased, A. L. Johnson and his co-defendant Mrs. Johnson adjusted the boundary lines of their respective interest to their mutual advantage and to make said interest more attractive and valuable, and thereafter A. L. Johnson conveyed to Mrs. Johnson a portion of his undivided one-tenth interest in his father's estate and subsequent thereto Mrs. Johnson conveyed to Mrs. Murphy and A. L. Johnson a portion of the tract of land described in the petition (to Mrs. Murphy for life with remainder in fee to A. L. Johnson), and that all of said transactions and conveyances were had and done for the interest and welfare of Mrs. Murphy, and again denied any intention or attempt to defraud her. They further denied that Mrs. Murphy was entitled to have an accounting from Mrs. Johnson for the alleged money, share of bank stock or certificate of deposit, or any interest or dividends thereon, or that Mrs. Johnson has now or ever had any money, certificate of deposit, or other personal property in her hands belonging to Mrs. Murphy.

By paragraph two of the answer defendants alleged that the deed executed by Mrs. Murphy in January, 1924, conveying to Mrs. Johnson her one-tenth undivided interest in decedent's landed estate was voluntarily signed, executed, acknowledged and delivered by Mrs. Murphy to Mrs. Johnson and recorded in the clerk's office in Lee county, Kentucky, wherein the land is located, and that Mrs. Johnson has exercised ownership of the property, made improvements thereon and claimed it as her own, and that during all this time Mrs. Murphy acquiesced in the claims of Mrs. Johnson and recognized her rights to her claim as the fee simple owner thereof and ratified her action in making said conveyance; that ever since the execution of the deed by Mrs. Johnson to Mrs. Murphy in 1938 referred to above, Mrs. Murphy exercised ownership and control over and to that tract of land and that during said time she had made improvements thereon by way of fencing and placing buildings thereon and that the claim of Mrs. Murphy is now a stale one and that she has been guilty of laches in the prosecution of any claim she may have or ever had and pleaded said facts in bar to her rights to recover herein.

By paragraph three of the answer in the way of counterclaim defendants alleged that since the execution

·of the deed mentioned herein Mrs. Johnson has paid the taxes on the land aggregating $240, and has provided Mrs. Murphy with clothing aggregating $400, and erected improvements on the land in the construction of a crib at a cost of $500, wood house at a cost of $50, fencing on the farm at a cost of $200, and improvements of dwelling and barn at a cost of $300, all of which expenditures had been made on that portion of the land conveyed to Mrs. Murphy by Mrs. Johnson and that no part of said expenditures had been paid by Mrs. Murphy and that Mrs. Johnson is entitled to have credit for said amounts, should it be adjudged that Mrs. Murphy is entitled to have the deed construed as a deed of trust, and that Mrs. Johnson is entitled to have a set-off against Mrs. Murphy to the personal property involved herein consisting of bank stock and for the sums and advancements made by Mrs. Johnson to Mrs. Murphy at her special instance and request, and that she is entitled to recover the value of same with interest thereon. The affirmative allegations of the answer and counterclaim were controverted by reply, thus completing the issues.

The evidence was taken by depositions and submitted to the chancellor for judgment, and the chancellor adjudged (1) that the deed executed by Mrs. Murphy in January, 1924, conveying her one-tenth undivided interest in her deceased father's land to Mrs. Johnson was a conveyance in trust to Mrs. Johnson for the use and benefit of Mrs. Murphy, and that the deed of conveyance dated June 16, 1938, from Mrs. Johnson to Mrs. Murphy for her life with remainder in fee to A. L. Johnson, was a violation of the trust and a fraud upon the rights of Mrs. Murphy, and that said deed be canceled and set aside and held for naught.

The court refused to adjudge to Mrs. Murphy a one-fifth interest in the one-half interest in the land allotted to Mrs. Johnson in the partition or division of the land, but held and adjudged that the tract of land described in the deed of June 16, 1938 (to Mrs. Murphy for life), was equivalent to the undivided one-tenth interest of Mrs. Murphy in the whole original tract, and it appearing that Mrs. Murphy was satisfied insofar as quantity, quality and value are concerned in said tract of land as representing her undivided one-tenth interest in the whole original tract, adjudged the said tract of land to Mrs. Murphy in fee simple as her share and portion of

the landed estate inherited from her father and ordered and directed the defendants, Mrs. Johnson and A. L. Johnson, to make, execute, acknowledge and deliver to Mrs. Murphy a good and sufficient deed of conveyance with covenant of general warranty of title conveying said land to Mrs. Murphy in fee simple, and in the event they failed to do so the master commissioner of the court was ordered and directed to make such deed on behalf of the defendants. The judgment, however, reserved a passway from the above mentioned tract of land for the benefit of certain other children and heirs of decedent.

(2) The court further adjudged that the share of capital stock in the Peoples Exchange Bank of Beattyville, Kentucky, assigned by Mrs. Murphy to Mrs. Johnson, was assigned and transferred in trust for the benefit of Mrs. Murphy and that she is entitled to said share of stock together with increases thereon, and ordered Mrs. Johnson to make such transfer, but upon her failing to do so the court commissioner would make the said transfer in behalf of Mrs. Johnson.

(3) The court further adjudged that the certificate of time deposit in the Peoples Exchange Bank of Beattyville for the sum of $1,377.60 with interest thereon for six months at the rate of 1½% per annum and the sum of money evidenced to be for the property of Mrs. Murphy and ordered and directed Mrs. Johnson to deliver same to Mrs. Murphy, or upon her failing to do so Mrs. Murphy should recover of Mrs. Johnson the sum of $1,-377.60 with interest as stated above for six months and with interest on the total thereof at the rate of 6% per annum from the date of the judgment until paid.

(4) It was further adjudged that the sum originally on deposit on interest in the First National Bank of Jackson, which was transferred from that bank to the Second National Bank of Lexington, or withdrawn from the Jackson bank and deposited in the Lexington bank, was and is the money and property of Mrs. Murphy and was held by Mrs. Johnson as trustee in trust for Mrs. Murphy and that the latter is entitled thereto. And, it appearing that at the time said account was withdrawn from the Jackson bank it amounted to $2,186.88 and that the deposit plus interest in the Lexington bank amounted to $2,191.88 and that with interest accruals thereon it amounted to $2,298.90 as of January 1, 1936, and that on that date Mrs. Johnson drew a check on said account in

favor of A. L. Johnson for the sum of $298.90 which was paid out of said account, leaving a balance of $2,000 which thereafter increased by regular accruals of interest to $2,080.09 as of July 1, 1938, that amount plus $298.90 withdrawn as above indicated, making a total of $2,378.99 was due Mrs. Murphy and adjudged that Mrs. Johnson transfer and deliver to Mrs. Murphy said amount and upon her failure to do so Mrs. Murphy would recover of Mrs. Johnson said amount with interest at the rate of 6% per annum from the date of judgment until paid.

(5) It appearing that Mrs. Johnson had loaned to C. X. Johnson the sum of $400 out of the funds of Mrs. Murphy for which she holds a note of C. X. Johnson therefor, adjudged that the note is held by Mrs. Johnson in trust for Mrs. Murphy and that Mrs. Johnson had no legal right or authority to so invest or lend the trust funds of Mrs. Murphy, and that said note is the property of Mrs. Murphy and directed Mrs. Johnson to deliver the same to her.

(6) The court further adjudged that Mrs. Murphy recover of Mrs. Johnson and A. L. Johnson costs expended for which she may have execution or other appropriate remedies and means to enforce the collection of the various items of the judgment and to enforce the performance thereof as may appear to be necessary. Mrs. Johnson and A. L. Johnson excepted to the foregoing judgment and prayed an appeal which was granted. After the judgment was entered Mrs. Murphy died and her husband, John Murphy, was appointed administrator of her estate and the action was revived in his name. A reversal is insisted upon the grounds that the chancellor erred in his application of the law to the facts disclosed in the record, or, that the judgment is not supported by the evidence.

Items 2, 3 and 5 of the judgment, concerning the share of capital stock of the Peoples Exchange Bank; the $1,377.60 in money on deposit in the same bank; and the note of C. X. Johnson in the sum of $400, are not involved in this appeal. It appears that in the evidence of Mrs. Johnson she made no claim to these items and has complied with the judgment of the court with respect thereto. Item 1, concerning the two deeds in question; item 4 relating to the claim of Mrs. Murphy to $2,000 in money on deposit in the First National Bank of Jackson

and later transferred to the Second National Bank of Lexington, amounting to $2,378.99; and item 6 for costs, were superseded and appealed from.

Mrs. Murphy testified that just previous to the execution of the deed in January, 1924, conveying to her mother her one-tenth interest in her deceased father's landed estate and the transfer of her money in the banks referred to, and the share of bank stock, she was keeping company with a man (not Mr. Murphy whom she later married) and that her mother and sisters were afraid she would marry the man and advised her to transfer her land and personal property to her mother so that she could take care of it for her, and that her sisters advised her to make a deed in trust to her mother to the land and that her mother was able to manage her property and take care of it better than she could. Pursuant to this advice she signed the deed but being unable to read she did not read it but they read it to her, and that her acknowledgment to the deed was taken by her sister Mrs. Rowland, who was a notary public. She said that about the same time that she executed the deed she transferred the bank account and bank stock to her mother; that the money she transferred to her mother was in the Peoples Exchange Bank of Beattyville and the First National Bank of Jackson; that it was understood that she was transferring her property, real and personal, to her mother to be kept in trust for her. She said that after she brought this action her mother told John Murphy that he could no longer remain in her home and she and Mr. Murphy left her mother's home. She said that she did not know anything about the execution of the deed from her mother to her to a portion of her mother's one-half interest in the land conveying to her a life estate only with remainder to her brother, A. L. Johnson, until after the deed had been executed and that she received the information about that matter from her sister.

Three of Mrs. Murphy's sisters, Mrs. Rowland, Mrs. Boone and Mrs. Kincaid, were introduced as witnesses for Mrs. Murphy. Mrs. Boone testified in part as follows:

"Q. Mrs. Boone, did you have a conversation with your mother the defendant, Mrs. Eliza B. Johnson, sometime back relative to your sister, Allie Johnson Murphy's part of your father's estate? A. I have had two or three conversations with my moth-

er regarding Sister Allie's part of my father's estate. The first one I recall was, it seems to me, two or three years after I married, and I have been married fifteen years, if that fixes the date. Mother said to me one day, 'Allie will have more than any of you children' and I said, 'How much will she have?' Mother said, 'She got what the rest of you did,' and that was something over $700.00 after Father died. And then mother said to me she has 'over $2000.00 of her own.' I know it surprised me then, for I didn't know Allie had it.

"Q. Did you have any connection with the transfer of your Sister Mrs. Murphy's, property to your mother, Mrs. Eliza B. Johnson? A. No. Well, I discussed it with her. I advised her to do that.

"Q. What was the reason for the suggestion and the discussion to your sister, Mrs. Murphy, for the transfer of her property to your mother? A. Well, at that time she was going with a man that we of the family felt would not be fair to the family or to Sister Allie. We felt that he might be unfair and force the farm to be divided and that didn't seem to be right and didn't meet with the approval of the family. We was afraid, too, that if the division was made and this man married sister Allie, that he would possibly get her property, and not be good to her. She liked the man. When we talked to her we told her that if the property was held in trust for her that she could not be hurt and that it might be of great help to her if the man didn't treat her alright. She didn't marry the man though.

"Q. What was your understanding as to how your mother was to take charge of your sister, Mrs. Murphy's property? A. From the way mother talked to me, mother was to take care of the property for Allie. I know she said to me, 'Your Pa, before he died, told me to take Allie's money and take care of it for her.' "

The witness further testified that she was present when her mother transferred some money to a bank in Lexington but she did not know whether or not it was Mrs. Murphy's money. She said the money was transferred from the First National Bank of Jackson to the Lexington bank but she was not positive whether it was

the Citizen's Bank or the First National Bank of Lexington, but she thought it was the Citizen's Bank.

The evidence of Mrs. Mary B. Rowland corroborates Mrs. Murphy and Mrs. Kincaid with respect to the representations made to Mrs. Murphy to induce her to transfer her property to her mother. The substance of their testimony is that they and their mother advised Mrs. Murphy to make this transfer and it was understood that the deed to the land and the transfer of the money was in trust to be held by Mrs. Johnson for the benefit of Mrs. Murphy. Mrs. Rowland testified concerning the transfer of the bank account at Beattyville and said that on the same afternoon they went on the train from Beattyville to Jackson and made the transfer of the deposit in the First National Bank of Jackson from Mrs. Murphy's account to her mother.

It is not denied that in September, 1922, when the estate of decedent was settled, there was deposited in the Jackson bank the sum of $7,33.81 as a part of Mrs. Murphy's share of her deceased father's money, and in January, 1924, the amount had increased to $829.15 and was transferred from Mrs. Murphy's account to Mrs. Johnson. It was a time deposit account and carried in the bank on interest which was added at intervals, and on September 1, 1928, it amounted to $1,469.15, but by November 15, 1928, the amount had been reduced to $1,000 and on May 15, 1931, it increased to the amount of $1,390.04, and on November 15, 1931, it was increased to $2,012.91 and the entire amount was withdrawn on December 28, 1933, in the amount of $2,186.88 which had been carried in the name of Mrs. Johnson from January 22, 1924. It is the contention of Mrs. Johnson that all the money she had belonging to her daughter which was or had been in the Jackson bank had finally been deposited in the Peoples Exchange Bank at Beattyville, and that she surrendered it all to Mrs. Murphy before her death.

It is contended for Mrs. Murphy that the money in the Jackson bank was never transferred to the Beattyville bank but on the other hand found its way to the Lexington banks, some of it being deposited in the Second National Bank of Lexington and some in the Citizen's Bank and Trust Company of Lexington. It is contended for Mrs. Murphy that the increase of the amount originally deposited to her credit in the Jackson bank

in 1922, in addition to interest, is accounted for from other money she inherited from her father's estate, some of it being from land or property in Richmond, Kentucky, and also Mrs. Murphy added to her account from time to time the proceeds from the sale of chickens, eggs and other farm products. Further tracing the money from the Jackson bank to the Lexington bank, it is shown that on December 28, 1933, Mrs. Johnson drew from the Jackson bank $2,186.88 and on February 1, 1934, approximately one month later, Mrs. Johnson deposited $2,191.88 in the Second National Bank of Lexington in her name. This is exactly $5 more than the amount just previously withdrawn from the Jackson bank. It is insisted for Mrs. Murphy that obviously this was the same money that was withdrawn from her account in the Jackson bank, increased by only the sum of $5 which Mrs. Murphy does not claim. The account in the Second National Bank of Lexington increased by interest additions and on January 6, 1935, it amounted to the sum of $2,298.90 and on that date Mrs. Johnson drew from that account $298.90 by a check issued to A. L. Johnson but not endorsed by him, and on the same date the exact amount of the check was deposited to the checking account of Mrs. Johnson in the Citizen's Bank and Trust Company at Lexington. The account in the Second National Bank of Lexington increased in small regular amounts, apparently interest accruals, until July 1, 1938, when it amounted to $2,080.90, which amount the court adjudged to Mrs. Murphy plus the $298.90 withdrawn by check in favor of A. L. Johnson, making a total of 2,378.99 which the court adjudged to Mrs. Murphy.

C. X. Johnson, a son of Mrs. Johnson and brother of Mrs. Murphy, who is attorney for appellants, testified that he prepared the deed conveying to Mrs. Johnson Mrs. Murphy's interest in her father's landed estate, and it was read and explained to Mrs. Murphy and she understood that she was deeding the land to Mrs. Johnson in fee simple rather than in trust, and that she was to remain in the home and live with Mrs. Johnson. With reference to the deed executed by Mrs. Johnson in 1938 to Mrs. Murphy, conveying to the latter a life interest in a certain portion of Mrs. Johnson's land, he said that after that deed was executed Mrs. Murphy talked to him about it and said that it was just what she wanted and she seemed to be satisfied with it. He testified in de-

tail with reference to both deeds in question and according to his evidence there was no fraud or undue advantage taken of Mrs. Murphy. He testified that Mrs. Murphy went to school but was not of sufficient mentality to learn to read or write. It further appears that Mrs. Murphy left a will which the county court refused to probate upon the ground that she lacked mental capacity to make a will. However, no appeal was taken from the judgment of the county court refusing to probate the will. It is insisted that she had the mentality of an average six year old child. He said that his father always insisted that the family deal kindly with Mrs. Murphy and requested that they protect her interests. He admitted that the sum of $773.81 was deposited to the credit of Mrs. Murphy in the Jackson bank and later, after the personal property was settled, Mrs. Murphy received a further sum from the sale of land in Richmond which increased her share of money received from her father's personal estate to the sum of $1,264.17, in addition to the one share of capital stock in the Beattyville bank. He said that his mother always looked after Mrs. Murphy's money and her livestock that she kept on the farm. Referring again to Mrs. Murphy's money in the Jackson bank, Mr. Johnson said that he had personally taken sums of money belonging to his mother from time to time which was added to her account, although the account was originally opened in the name of Mrs. Murphy. Without going into further detail it is sufficient to say that according to Mr. Johnson's testimony the money transferred from the Jackson bank to the Lexington banks belonged to Mrs. Johnson and all the money that Mrs. Johnson had belonging to Mrs. Murphy was included in the Beattyville bank account which had been turned over to Mrs. Murphy.

Mrs. Johnson testified that Mrs. Murphy did not have $2,000 on deposit in the Jackson bank and had only the sums referred to above which she inherited from her father's personal estate, the original account being $773.81, referred to in the evidence of C. X. Johnson. She further testified in detail as to various deposits, withdrawals, redeposits, etc., but according to her evidence none of Mrs. Murphy's money was transferred from the Jackson bank to the Lexington banks and that all the money in the Lexington banks belonged to her. Also, according to her testimony, the deed from Mrs.

Murphy to her was intended to convey fee simple title to Mrs. Murphy's one-tenth interest in her deceased father's landed estate and was not a deed of trust, and also the deed made by her to Mrs. Murphy in 1938 conveying to Mrs. Murphy a life interest in a certain portion of Mrs. Johnson's share of the land laid off to her pursuant to the judgment of the county court partitioning the land, was a fair division or a fair portion of Mrs. Murphy's interest in her father's land. A. L. Johnson and other witnesses testified in behalf of the appellants and if their evidence is to be believed, Mrs. Murphy has no grounds for complaint concerning the land or the money in question, thus presenting a sharp conflict in the evidence.

The claimed lack of mental capacity of Mrs. Murphy to take care of her estate is insisted on as a reason. why she transferred her property, particularly the land, to her mother to take care of and support Mrs. Murphy. If she was incapable of taking care of her estate it would have been proper to have had a committee appointed for her to take care of her estate for her rather than accept from her deeds of conveyance to her land and transfer of large sums of money. It also appears that Mrs. Murphy increased her bank account inherited from her father by the proceeds of sales of farm products and also that she loaned money to certain members of the family and accepted their notes therefor. If she was incapable of taking care of her estate it would result that she was incapable of making these many business transactions with members of her family. It would appear that the members of the family recognized Mrs. Murphy's ability to handle her estate when they were dealing with her.

Referring again to the evidence, we find no trouble in arriving at the conclusion that in view of the positive evidence of Mrs. Murphy and her three sisters, it is sufficient to sustain the chancellor's finding that the deed from Mrs. Murphy to Mrs. Johnson conveying the former's interest in her landed estate was intended to be a deed of trust rather than in fee simple. However, with respect to the evidence relating to the value of the land adjudged to Mrs. Murphy as being a fair portion of her father's land, and the transfer of Mrs. Murphy's money from the Jackson bank to the Lexington banks, the evidence is not so clear. It is very confusing, complicated and uncertain, and we are not convinced that either side

has the preponderance of the evidence on those two issues. The chancellor was better acquainted with the value of land in the community and in a better situation to arrive at the equities between the parties than we are from reading the record. But if it be conceded that the land adjudged to Mrs. Murphy is of greater value than her original one-tenth interest in her deceased father's landed estate or inequitable and unfair to Mrs. Johnson had Mrs. Murphy lived, yet since Mrs. Murphy has deceased and Mrs. Johnson has inherited all the land with the improvements thereon adjudged to Mrs. Murphy, subject to the curtesy of her surviving husband, we cannot see wherein any benefit or advantage could result to Mrs. Johnson by reversing that part of the judgment which would result in the appointment of commissions and a redivision of the land, or a part of it, which would necessarily require costs and delay in settling the estate without any material benefit to Mrs. Johnson or anyone.

It is admitted by Mrs. Johnson that all the money turned over to her by Mrs. Murphy was for the benefit of the latter and she insists that she has returned it all to Mrs. Murphy, the only issue being whether or not the money in the Jackson bank belonging to Mrs. Murphy was transferred by Mrs. Johnson to the Beattyville bank and included in the money she turned over to Mrs. Murphy from that bank; or, whether Mrs. Murphy's money was transferred from the Jackson bank to the Lexington banks as found and adjudged by the chancellor. Since Mrs. Johnson was acting as trustee for Mrs. Murphy the burden was on her to make a full and complete accounting and all doubts will be resolved against her. Burton et al. v. Clere et al., 271 Ky. 411, 112 S. W. (2d) 57. Since the evidence is confusing and uncertain and such as to leave reasonable minds in doubt as to the truth of it, we do not feel authorized to disturb the finding of the chancellor. This rule is too well known by the legal profession to require citations of authority.

The chancellor also properly adjudged the cost against appellants. We know of no reason for departing from the rule that costs follow the judgment.

Judgment affirmed.