## Braun v. Smith et al.

Feb. 15, 1944.

C. Maxwell Brown for appellant.
Lawrence F. Speckman for appellees.

OPINION BY JUDGE REES—Affirming in part and Reversing in part.

On May 24, 1941, two actions were filed in the Jefferson circuit court by Elizabeth Braun against Mary Reichert Smith, one to have the plaintiff adjudged the owner of stock of the Lincoln Building & Loan Association of Louisville, Kentucky, then held in the name of the defendant, and the other to set aside a deed in which the plaintiff had conveyed to the defendant an interest in a house and lot located at 954 Baxter avenue in Louisville. In the first action the plaintiff alleged in her petition that on March 19, 1941, she gave the defendant the sum of $1,100 in currency with instructions that it be used to purchase stock in a building and loan association for plaintiff's account; that defendant took the money and purchased stock in the amount of $1,100 in the Lincoln Building & Loan Association, but fraudulently and without permission of the plaintiff had such stock issued in her own name. The issue finally made by the pleadings in this action was whether or not the transaction of May 19, 1941, constituted a gift of $1,100 by plaintiff to the defendant. In the second action the plaintiff alleged in her petition that on April 5, 1941, she conveyed in fee simple a certain lot in Louisville to Frances Deuser "for reconveyance back to plaintiff, Elizabeth Braun, and defendant, Mary Reichert Smith, for their joint lives as tenants in common with the remainder in fee simple to the survivor of them;" that by reason of mental and physical infirmities she was not competent to convey her real estate; and that she was caused to execute the deed without consideration by the fraud, persuasion and undue influence of the defendants. Frances Deuser and Judson Smith, husband of Mary Reichert Smith, were made defendants. The plaintiff prayed that the deed be set aside; that her title to the property be quieted; and that she be adjudged the sole owner of same in fee simple. The two actions were consolidated, considerable proof was heard, and on final submission the chancellor found that the delivery of the $1,100 on March 19, 1941, was a gift. He declined to set aside the deed of April 5, 1941, and the petition in each case was dismissed. The plaintiff moved the court to transfer the action to the common law docket, apparently on the theory that the suit to set aside the deed was an action in ejectment. The motion was overruled and properly so, since the issues were purely equitable.

The real estate in dispute is a lot on Baxter avenue in Louisville with a two-story residence thereon. It had been conveyed in 1908 to Elizabeth Braun and her husband, Henry Braun, jointly for life, and upon the death of either to the survivor in fee simple. Henry Braun died in 1926, and the appellant continued to live in the property. Her only heirs at law are Sauter Reichert, a nephew, and Marie Jean Reichert, a great-niece, daughter of the appellee, Mary Reichert Smith, whose first husband was Clifford Reichert, appellant's nephew and Sauter Reichert's brother. Marie Jean Reichert is now about 15 years of age. Clifford Reichert died in August, 1930, and in September, 1930, his widow and her daughter, then two years of age, moved into the upstairs portion of appellant's home, which had been prepared as an apartment, and remained there about a year, paying rent at the rate of $25 a month. Appellee then moved with her daughter to Kankakee, Illinois, where one of her sisters lived. During the next eight or nine years she saw appellant only on the rare occasions when she and her daughter visited in Louisville and New Albany, Indiana, where her mother and other sisters resided. Appellant continued to live in the home on Baxter avenue after her husband's death in 1926, alone except when she had a servant or paid companion. Servants and companions were changed frequently, and she was often alone in the house doing her own work sometimes for long periods of time. In the spring or early summer of 1939 she had a slight stroke. A Miss Gardner stayed with appellant for three weeks just prior to July 1, 1939, but on account of illness in her family was compelled to leave. On July 1, 1939, she wrote to appellee, Mary Reichert Smith, then Mary Reichert, at Kankakee, Illinois, stating that she was compelled to leave Mrs. Braun's home. The note concluded: "Your aunt wants you to come and stay a week or two with her so please start here at once as I don't think Mrs. Braun should be alone and I know you will be so good to her. Best for you to get here at once." Appellee left Kankakee immediately and drove to Louisville in an automobile. Appellant testified that she did not authorize Miss Gardner to write to appellee and denied any knowledge of the invitation. Appellee remained two or three days on that occasion and left when Mrs. Braun announced that she had procured a woman to stay with her. In the autumn of 1939 appellee wrote to Mrs.

Braun and said she would be willing to move to Louisville and occupy the upper apartment with her daughter and furnish appellant her meals and wait upon her if she needed her. Appellant did not answer the letter until February 2, 1940, when she wrote as follows to appellee at New Albany, Indiana, where the latter was visiting: "Mary come over I thought about you moving over here sell your dining room chairs you can have mine come over and see me we can talk it over. (Signed) Aunt Lizzie." In response to this request appellee went to appellant's home in Louisville where it was agreed that appellee and her daughter should move into the upper apartment. According to appellee it was agreed that she should furnish appellant her meals, nurse her during any illness, and see that she was never left alone in the house. In return appellee was to have the apartment without rent and appellant agreed to sell the house later and purchase a bungalow which was to be conveyed to Marie Jean Reichert and Mrs. Braun, jointly for life, and upon the death of either to the survivor. Appellee and her daughter moved into the apartment early in March, 1940, and the parties lived harmoniously until May 5, 1941. During all of that time Mrs. Braun went upstairs to Mrs. Smith's apartment for her meals except during three weeks when the meals were carried down to her. On March 18 or 19, 1941, Mrs. Braun was taken ill during the night and called Mrs. Smith, who went downstairs and, at Mrs. Braun's request, spent the remainder of the night in the bed with her. Mrs. Braun was alarmed by her condition, and informed Mrs. Smith that she had concealed a large sum of money in the cushion of a chair in the room. She wanted Mrs. Smith to know where it was located in the event anything happened to her. She refused to permit Mrs. Smith to call a doctor. On the following morning the money was taken from the chair and counted and found to amount to slightly less than $1,100. Mrs. Braun then informed Mrs. Smith that she had money concealed under the linoleum on the floor, and enough was taken from that repository to make exactly $1,100. She gave the money to Mrs. Smith and advised her to invest it in building and loan association stock in Mrs. Smith's name, saying it would net her 4% or $44 a year. Mrs. Smith purchased stock of the Lincoln Building & Loan Association and was given a book showing that the stock was in her name. She showed the book to Mrs. Braun,

and the latter said: "That is the way I wanted it." Mrs. Braun denied seeing the book, and testified that she gave the money to Mrs. Smith with directions to purchase building and loan association stock in her, Mrs. Braun's name, and assumed that this had been done until after the quarrel of May 5, 1941, when she learned that the stock had been purchased in the name of Mrs. Smith. Mrs. Braun admitted that she executed the deed of April 5, 1941, but claimed that she was mentally and physically infirm at the time and was induced to execute it by the fraud and undue influence of Mrs. Smith. There was some medical testimony tending to support her claim of incompetency, but there was evidence to the effect that she thoroughly understood the transaction and acted freely and of her own volition. The attorney who drafted the deed testified that she explained to him exactly how she wanted it drawn and discussed the matter with him intelligently and at length. Her deposition was taken on June 4, 1941, a few days after the suit was commenced, and again on April 22, 1942. On June 3, 1943, she testified orally before the chancellor. She was examined at great length on each occasion, and her testimony reveals her as an intelligent, determined and strong-willed but exacting person.

It would serve no useful purpose to relate the evidence in more detail. It is sufficient to say that on the salient points the facts are known only to Mrs. Braun and Mrs. Smith, and their testimony is conflicting. Each was corroborated in some respects by other witnesses, but with few exceptions the witnesses on both sides were either closely related to the parties or intested in the result. All the evidence shows that the relationship was harmonious and happy until the unfortunate quarrel on May 5, 1941. There is no dispute as to the nature or cause of the quarrel. On Sunday afternoon of May 5, 1941, Marie Jean Reichert walked with Mrs. Braun to the home of the latter's brother-in-law, who lived in the neighborhood, and then returned to her mother's apartment. At 5 o'clock Mrs. Braun had not returned, and Mrs. Smith left a note on her table saying she had gone to New Albany to see her sisters and would return early. Her sister and brother-in-law from Kankakee, Illinois, were visiting her at the time and they went with her to New Albany. Mrs. Smith returned at 10 p. m. Mrs. Braun was angry and remonstrated with her for staying out so late. A quarrel resulted, and Mrs. Braun ordered

Mrs. Smith out of the room. The latter continued to prepare and send down meals to Mrs. Braun, but the latter refused to eat them or to admit Mrs. Smith into her room. On the day after the quarrel Mrs. Braun procured a lawyer and within a few days the two suits were instituted. The chancellor, after dismissing the petitions, adjudged that Mrs. Smith be required "to offer and continue to offer to serve the plaintiff with meals, nursing and care at her home."

The evidence on the crucial points in the case is conflicting, but there is no escape from the fact that the arrangements between appellant and Mrs. Smith, whatever they may have been, were mutually satisfactory and that during more than 14 months no rift occurred in the harmonious relations existing between them. The quarrel on May 5, 1941, arose over a trivial incident, and, according to Mrs. Smith, she was willing to dismiss it from her mind on the following morning but appellant was adamant in her rejection of efforts at a reconciliation. It is a case where, after a careful consideration of the record, the mind is left in doubt and therefore the chancellor's finding of facts should not be disturbed. Johnson v. Murphy's Adm'r, 293 Ky. 294, 168 S. W. (2d) 1022; Slack's Ex'r v. Barrett, 290 Ky. 251, 160 S. W. (2d) 595.

One minor question remains to be disposed of. After the judgment had been entered the defendant, Mrs. Smith, filed a motion for a rule against Mrs. Braun requiring her to show cause why she should not deliver to the defendant one electric refrigerator, the property of the defendant. The motion was sustained, and proof as to the ownership of the refrigerator was heard by the chancellor. The plaintiff demurred specially to the rule because the subject matter was not involved in the action and the court was without jurisdiction. The demurrer was overruled and a judgment was rendered making the rule absolute and directing the plaintiff to deliver the possession of the refrigerator to the defendant, Mary Reichert Smith. The judgment was made a supplement to and a part of the judgment theretofore rendered. The refrigerator was not mentioned in the pleadings, and was only incidentally referred to in the evidence. Its ownership was not in issue. Clearly the chancellor was without jurisdiction to determine the question of ownership in the

proceeding before him. This part of the judgment is reversed, but in all other respects the judgment is affirmed.