Nick THOMAS and Barbara Thomas, Plaintiffs,

v.

Larry HODGE, Paul Hamilton, Joan Hamilton, and First and Peoples Bank, Defendants.

Civ. A. No. C91–0596–L(H).

United States District Court, W.D. Kentucky.

May 25, 1995.

Harry B. Miller, Jr., Thomas W. Miller, Miller, Griffin & Marks, Lexington, KY, for plaintiffs.

Elmer J. George, Mark L. Morgan, Elmer George Associates, Lebanon, KY, C. Thomas Hectus, Dennis Lee Mattingly, James M. Burd, Williams & Wagoner, Louisville, KY, for defendants.

Barbara B. Edelman, Joseph H. Terry, Penny R. Warren, Wyatt, Tarrant & Combs, Lexington, KY, for First & Peoples Bank.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiffs have filed a motion for Partial Summary Judgment against Defendant Hodge on their claim for an accounting. Plaintiffs allege that Hodge failed to account for the property and profit obtained by him as their agent. Plaintiffs object to Hodge's accounting because the supporting documentation consists of merely Hodge's own, unsubstantiated records of all debts and profits resulting from his transactions with, and on behalf of, the Plaintiffs. Plaintiffs argue that they are entitled to a refund of the amount for which Hodge has not satisfactorily accounted.

Previously, Magistrate Judge Gambill required Hodge to make an accounting and Judge Johnstone affirmed that ruling. In response to that order, Hodge submitted an accounting, which Plaintiffs now deem to be insufficient. The Court has carefully considered this difficult and interesting issue as it applies now to the facts educed at trial. The Court concludes that an agent's duty to provide an accounting arises when he holds property or a thing of value on behalf of the principal and then disposes of it or disperses it. Consequently, where Hodge held funds or disposed of property he must make an accounting. Where he merely rendered bills for services, his right to retain payment will be tested by other appropriate legal proceedings.

### I.

An agency is a fiduciary relationship resulting from manifestation of: consent by one person, the principal, to another, the agent, that the agent may act on the principal's behalf and subject to his control; and consent by the agent to so act. *Terbovitz v. Fiscal Court of Adair County, Ky.*, 825 F.2d 111 (6th Cir.1987); *McAlister v. Whitford*, 365 S.W.2d 317 (Ky.1962). Agency is a legal conclusion to be reached only after analyzing the relevant facts, and the burden of proving

agency is on the party alleging its existence. *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250 (Ky.1992).

 Once agency is established, and proof is introduced showing that the principal's property was in the hands of the agent, the agent must render an accounting to explain the disposition of any and all property, real or personal, that is received by the agent from or for his principal. *Deaton v. Hale*, 592 S.W.2d 127, 130 (Ky.1979).[1] The right of a principal to require an accounting of his agent is elementary, and absent a contrary agreement, there is no discretion as to whether an accounting may be required. *Id.* The agent must account to his principal "for any gift, gratuity, or benefit received by him in violation of his duty, or any interest acquired adverse to his principal without full disclosure, though it does not appear that the principal has suffered actual loss by fraud or otherwise." *Stewart v. Ky. Paving Co., Inc.*, 557 S.W.2d 435, 438 (Ky.App.1977).

 A satisfactory explanation of the disposition of property requires the agent to submit, whenever possible, receipts from persons other than the agent to support each accounting entry. *See Clark v. Isaacs*, 182 Ky. 391, 397 206 S.W. 606 (1918) (holding that when a party is required to submit an accounting, original receipts must be submitted where possible); *Power v. Reeder*, 39 Ky. 6, 11 (1839) (holding that the parties' handwritten statements of account were insufficient to determine an accurate settlement and requiring that the parties substantiate their claims before an independent auditor). Therefore, more than the agent's own, unsubstantiated records of transactions concerning the property is required.

 All presumptions are applied and all doubts are resolved against a trustee who fails to keep proper records of his trust. *Burton v. Clere*, 271 Ky. 411, 112 S.W.2d 57, 60 (1938). Like a trustee, an agent has the burden of showing on the accounting how much principal and income he has received and from whom, how much disbursed and to

whom. If he has no written records to back his claim due to his own faulty system of keeping accounts, the court will be strongly inclined to charge him with the sum he is alleged to have received. *Id.*

## II.

There are two paths of analysis. The first requires the Court to inquire whether Hodge is an agent in any given circumstance. If he is not, then he has no duty to account. Hodge argues that this distinction determines the parameters of his obligation to account.

 In this case, Hodge acted as Plaintiffs' agent with respect to many purchase and sale transactions for saddlebred horses. Hodge, however, also acted as a vendor of services. He boarded and trained Plaintiffs' horses at his place of business, Kalarama Farm. Because a vendor owes no fiduciary duty to his vendee, the vendee cannot require the vendor to provide an accounting of their dealings.

 It is too elementary to be disputed that trainer and owner may have a different relationship on the track than in the barn. On the track, the trainer's word may bind the owner to enter a show or to consummate a sale. In the barn, the trainer undertakes responsibilities which are fundamentally different. When he feeds and trains the horse or rides him in the ring, he performs a service. He binds no one. He acts in no one's stead, except to perform a service. Thus, those cases cited by Plaintiff purporting to show agents acting on behalf of horse owners, simply do not apply to that part of the relationship in which Hodge merely provides a service. The scope of any agency is proscribed by its terms. In cases such as this one, the extent of an agency can be difficult to determine.

The Court believes that this is quite a "fine distinction," as Judge Gambill suggested. For that reason, analyzing any set of facts

1. This duty to account is an outgrowth of an agent's general duty to make full disclosure to his principal of all material facts relevant to the agency relationship that an agent could reasonably anticipate his principal would desire to have communicated to him. *Aero Drapery of Kentucky, Inc. v. Engdahl*, 507 S.W.2d 166, 169 (Ky.1974).

from this perspective does not always render a clear result. Consequently, the Court finds that the foregoing analysis is not wholly satisfactory.[2]

The Court concludes that this case turns on a more elementary proposition. The agent's duty to account arises when he holds the principal's property and then disposes of it or disperses it. The duty arises because the principal has no other means for determining the proper use of his property held in trust. Where an agent merely renders bills, but holds no funds and disposes of no property, the accounting remedy is misapplied.

If an agent cannot account for funds of the principal, the principal is entitled to return of those funds. If the vendor cannot justify his charges, the vendee may refuse to pay. Or, if he had already made payment, he may sue for breach of contract, false billing, or fraud. If Plaintiffs were dissatisfied with the services provided or the money charged by Hodge, they could have refused to pay the bill or have brought suit to challenge the amount charged and paid. Under those circumstances, Hodge would be required to justify the amounts he charged for his services and the need for those services.

In our case, Hodge, whether as agent or vendor, sometimes held property and dispersed it, while at other times he did not. In these cases, where he held and disposed of property, no one dares dispute that he must account fully. Where he merely rendered bills for payment, the Court concludes an accounting is not the appropriate remedy to challenge the bill.

### III.

■ The bulk of Hodge's accounting consists of the following information: (1) Kalarama Farm's monthly transaction reports on Plaintiffs' account with forwarding accounts receivable balances, (2) Kalarama Farm invoices from November 1987 through February 1991 with entries of all charges for services, (3) Kalarama Farm's bank deposit slips showing the date and amounts of payment on Plaintiffs' account, and (4) copies of checks paid by Plaintiffs which the Bank returned for insufficient funds. These document the bills regularly submitted to Plaintiffs for their horses' board, training, food, veterinary services, shoeing, supplies, and show expenses. These expenses were accrued when Hodge was acting as a vendor of services to Plaintiffs. Moreover, it does not involve accounting for Plaintiffs' property which Hodge dispersed or disposed. Therefore, no accounting is required.

The remainder of Hodge's accounting consists of copies of checks and deposit slips relevant to various sales and purchases of horses from February 1988 through April 1989. Because Hodge was Plaintiffs' agent for the purpose of conducting these transactions, and, more important, because he held and disposed of Plaintiffs' property, he must account for the disposition of those funds and property. Hodge submitted a letter from Garland P. Rose, a CPA, explaining that the transactions in the horse business do not involve normal billing procedures through accounts receivable, but rather consist of direct case sales or trade and commissions from the sale of horses. The letter explains the price and commissions involved in each transaction. Attached are copies of checks from purchasers of horses and deposit tickets that Hodge filled in for deposits in the Kalarama Farm account.

■ In some of the listed transactions, Hodge was the seller of the horse, not Plaintiffs' agent. Plaintiffs purchased both "The Fox Chaser" and "Harlem's Apollo" from Hodge and Joan Hamilton. Hodge did not act as Plaintiffs' agent with respect to these horses and he did not receive a commission on the sales. Therefore, he has no duty to account to Plaintiffs for these transactions.[3]

■ For the most part, Hodge's accounting for Plaintiffs' property and funds is suffi-

---

**2.** In this particular case, however, the Court does believe that the same result may be achieved by either path of analysis.

**3.** The accounting submitted by Hodge contains a number of inaccurate numbers and statements about these two transactions. This would be an insufficient accounting if Hodge had acted as Plaintiffs' agent for the two purchases. Because Hodge served solely as the seller, however, the mistakes are not an issue.

cient. Plaintiffs wrote checks to the seller or the seller's agent directly. Hodge did not have possession of the funds for disbursement. Hodge's deposit tickets document his deposits of his commission into the Kalarama Farm account. The commissions he earned as Plaintiffs' agent are his property, not Plaintiffs', and accordingly, he need not account for more than his receipt of the funds.[4]

■ At least one of the transactions concerning "The Biltmore," was not clear initially. Jim Robertson, the buyer, wrote a check for the purchase price, $35,000 to Kalarama Farm for the purchase of "The Biltmore." Hodge endorsed the check for the full $35,000 to Kalarama Stud, which paid Hodge his usual ten percent (10%) commission from the proceeds, as evidenced by Hodge's deposit ticket. It is evident that Plaintiffs were aware that Hodge was supposed to apply the remaining $31,500 to the purchase of "Harlem's Sweet Lou Dunbar." However, Hodge initially failed to demonstrate that he disposed of the funds properly by sending the funds to Kalarama Stud or Paul Hamilton, rather than kept the money for himself. The accounting is resolved by reference to the deposit of the check, which shows that the check was deposited directly to the account of Kalarama Stud as required.

■ With respect to the eventual sale of Plaintiffs' horses, the December 1990 agreement would be sufficient documentation to support Hodge's accounting of the disbursement of the sales proceeds to Kalarama Farm, Kalamara Stud, and the Bank.[5] The agreement specifies the amounts of the debts owed, interest, and, future accrual. The agreement also assigns the order of priority for each creditor to receive the proceeds of the sale of collateral. Hodge did not submit the 1990 Agreement as part of his accounting, nor did he provide any documentation of the disposition of the sales proceeds, such as copies of checks to Plaintiffs' creditors. However, at trial, Hodge does cite the 1990 agreement as the basis for the payment of proceeds of sales to Paul Hamilton. He also cites the notice given to Plaintiffs of the allocation of proceeds from Paul Hamilton. Further, at trial Defendants provided a detailed accounting for the amounts charged to each horse sold. Plaintiffs were informed precisely the amounts received on their behalf and the disposition of these proceeds. Moreover, the Bank paid the creditors almost precisely the principal amount of the debt plus the per diem charges to which Plaintiffs' agreed. This satisfies the accounting.[6]

The Court is issuing an order consistent with this Opinion.

---

4. This analysis applies to Plaintiffs' purchase of "Champagne Heiress," "Arista," "Harlem's Sweet Lou Dunbar," and "I Prefer Gold." With respect to the latter two horses, the parties dispute whether Hodge was entitled to receive commissions from the sellers of the horses in addition to his commission from Plaintiffs. The propriety of Hodge's receipt of property or funds from other persons, however, is an issue with respect to Plaintiffs' fraud and breach of fiduciary duty claims, not their claim for an accounting.

5. For purposes of this analysis, the Court is assuming that Hodge continued to act as Plaintiffs' agent for these sales, even though he was acting as the Bank's agent also.

6. Another remaining issue for accounting concerns the disposition of funds from the sale of "Shea Tremendous" and four foals. The evidence reveals that Hodge was not involved in this transaction.